**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN THE MATTER OF:

AGP E-GLASS CO.,                                     Chapter 7
                                                     Case No. 24-50838-MLO
          Debtor.                                    Hon. Maria L. Oxholm
_____/

**CHAPTER 7 TRUSTEE'S MOTION FOR**
**ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365**
**AUTHORIZING (1) THE SALE OF DEBTOR'S PROPERTY**
**RELATED TO THE CANTON, MICHIGAN PREMISES**
**FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND**
**ENCUMBRANCES, (2) THE ASSUMPTION AND ASSIGNMENT OF**
**EXECUTORY CONTRACTS, (3) THE TRANSFER OF A LIEN**
**TO SALE PROCEEDS, AND (4) GRANTING RELATED RELIEF**

K. Jin Lim, the Chapter 7 Trustee of AGP E-Glass Co., by and through her

counsel, Sandra O'Connor Law, PLLC, hereby submits this motion (this "Motion")

for entry of an order, substantially in the form attached hereto as **Exhibit 1** (the

"Proposed Order"), pursuant to sections 105(a), 363, and 365 of title 11 of the United

States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the

corresponding Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the Eastern District of Michigan (the "Local Rules"):

(a) authorizing and approving the sale of the Assets located at and related to the

Debtor's Canton, Michigan facility (the "Premises"), free and clear of claims, liens,

encumbrances, and other Interests (as defined below) (except as set forth in the Purchase Agreement), pursuant to that certain Transfer and Purchase Agreement, dated January 27, 2025 (the "Purchase Agreement"),[1] a copy of which is attached to this Motion as "**Exhibit A**"), by and between the Trustee and NxLite Corporation (or its designee) ("Buyer"), (b) authorizing and approving the assumption and assignment of the Assumed Contract in connection with the Transactions; (c) authorizing that the IRS Tax Lien (as defined below) be transferred to attach solely to the proceeds of the Transactions; (d) authorizing and approving the Transactions contemplated under the Purchase Agreement, and (e) granting related relief.

IN SUPPORT of this Motion, the Trustee states:

## **JURISDICTION**

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested in this Motion are Bankruptcy Code sections 105(a) and 363(b), (f), and (m) and 365, together with

---

[1] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the Purchase Agreement.

Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and the corresponding Local Rules.

**PRELIMINARY STATEMENT**

5.      After serving as the chapter 7 trustee of the Debtor's estate for over two months, the Trustee comes before this Court with an executed Purchase Agreement, that the Trustee submits, in the exercise of her sound business judgement, is fair and reasonable and will maximize the value of the Estate for the benefit of creditors. The Purchase Agreement allows for the sale of all of the Estate's assets located on or related to the Premises, obviating any need for the Estate to spend further funds to employ specialized movers and repair teams to remove the massive, multi-ton, highly-customized equipment from the Premises, if the equipment was sold piecemeal. The proposed sale also obviates the need for the Trustee to incur the costs and fees associated with employment of an auctioneer. Further, the proposed transaction also includes (a) the assumption, assignment and cure of the Lease (an otherwise potentially costly administrative expense to the Estate and a potential rejection damages claim that could dilute all other unsecured creditors) and (b) the assumption of liabilities agreed to by the Buyer and the Trustee related to the Shared Services Agreement and the Shared Personnel Agreement, which will generate a six-figure cash sum for the Estate—together, paving the way for the Trustee to make distributions to creditors on behalf of the Estate quickly. The proposed sale will also

facilitate the employment of two former employees of the Debtor, as the Buyer will assume the requisite immigration obligations for such Specified Employees' Visas.

6. The Buyer is uniquely situated to purchase the Assets, as it previously worked with the Debtor at the Premises and utilized certain of the Debtor's employees and equipment under a Shared Space Agreement and a Shared Personnel Agreement. The Debtor operated in a niche industry that was still in its research and development stage, and therefore, other than the Buyer, it would be difficult to find a purchaser who could utilize all of the Debtor's specialized equipment. The Debtor's equipment was highly customized, and the Premises was built-out to accommodate the equipment—and the Trustee understands that the Buyer assisted with such buildout consultations. Because of the Debtor's previous working relationship with the Buyer and the Buyer's knowledge of the business, the Buyer is able to provide additional consideration for the assumption of certain liabilities and relieve the estate from a potential rejection damage claims that would not be included in a piecemeal sale of equipment.

7. If the Assets were sold at an auction rather than by this Sale Motion, the Trustee believes it would be unable to generate the same result and net proceeds for the Estate. Another offer would not be expected to include the assumption of the Lease liabilities. It likewise would not include all of the assets at the Premises, potentially requiring the Trustee to remove unsold assets from the Premises, which

would be costly. Therefore, the Purchase Price is the highest and otherwise best offer that the Trustee believes, in her business judgment, she would receive for the Assets.

8. Finally, the Buyer is able to move swiftly. Therefore, the Trustee submits that the proposed sale under this Sale Motion is the best path forward under the circumstances. Accordingly, the Trustee requests that this Court enter the Proposed Order approving the Purchase Agreement and authorizing the Trustee to consummate the Transactions contemplated thereunder.

**FACTS**

9. On November 14, 2024 (the "Petition Date"), the above-captioned debtor (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "Court"). On the same day, K. Jin Lim was appointed as the chapter 7 trustee (the "Trustee") for the chapter 7 bankruptcy estate of the Debtor (the "Estate"). At approximately the same time, the Debtor ceased all business operations.

10. Prior to the Petition Date, the Buyer worked with the Debtor pursuant to two contracts: the Shared Space Agreement and the Shared Personnel Agreement. Under the Shared Space Agreement, on a monthly basis, the Buyer paid the Debtor certain amounts in exchange for the use of certain equipment and employees, and to subsidize a portion of the rent for the Premises, among other things. Additionally,

the Buyer and the Debtor were party to a Shared Personnel Agreement, whereby the Buyer utilized certain of the Debtor's employees. These services terminated when the Debtor ceased its operations.

11. On January 27, 2025, the Trustee, in her capacity as the Trustee of the Debtor's Estate (the "Seller") and the Buyer entered into the Purchase Agreement. As further described in the Purchase Agreement, the Purchase Agreement will provide the Estate with (i) $425,000.00 in new cash plus (ii) the relinquishment of $100,000.00 in cash that was deposited with the Debtor by the Buyer under the Shared Services Agreement, (iii) plus the assumption of certain Assumed Liabilities as set forth in the Purchase Agreement, (iv) plus $112,000.00 related to the Shared Services Agreement and the Shared Personnel Agreement (collectively, the "Purchase Price")—all in exchange for the sale of all of the Debtor's assets located at and related to the Premises (the "Assets"). The Purchase Agreement also includes standard mutual releases between the Buyer and the Trustee on behalf of the Estate. On information and belief, the Trustee submits that the Buyer would not have entered into the Purchase Agreement without the inclusion of these releases. The Trustee has not identified any claims against the Buyer, so the release of claims against the Buyer does not constitute a relinquishment of any assets of the Estate.

12. The Assets constitute property of the Estate and title to the Assets is vested in the Estate within the meaning of Bankruptcy Code section 541(a).

13. Upon the Trustee's diligence, no validly perfected liens are on the property except as set forth in this paragraph. Thus, pursuant to Bankruptcy Code sections 105, 363 and 365, the Trustee now seeks to sell the Assets to Buyer, subject to the terms of the Purchase Agreement, free and clear of Interests, with all Interests on the Assets being terminated and extinguished upon the Closing of the Transactions, except for (i) the IRS Lien, which, to the extent that it has not been satisfied prior to the Closing, will attach to the sale proceeds, and (ii) the Grinding CNC Machine listed in Schedule A-1 to the Purchase Agreement (the "<u>Grinding CNC Machine</u>"), which shall be transferred to Buyer subject to any remaining properly secured security interest.

## **<u>REQUEST FOR AUTHORITY TO SELL PROPERTY</u>**

14. Bankruptcy Code section 363(b) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Property of the estate may be sold outside of the ordinary course of business where the sale represents an exercise of a sound business decision. <u>Stephens Indus., Inc. v. McClung</u>, 789 F.2d 386, 390 (6th Cir. 1986). Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether accurate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property and (d)

whether the parties have acted in good faith. <u>In re Weatherly Frozen Food Group,</u> Inc., 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992) (citing <u>In re Titusville County Club</u>, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991)). As explained below, in this case, each of these four factors has been or will be met. Accordingly, the proposed Purchase Agreement and the Transactions contemplated thereunder should be approved.

**A.      Sound Business Justification**

15.      Sound business justification exists for the consummation of the Transactions contemplated under the Purchase Agreement. Although many sales of assets outside the ordinary course of business are conducted pursuant to competitive bidding procedures and public auctions, Bankruptcy Code section 363 does not require these procedures and the Trustee submits that such process would not be in the best interest of the Estate in this particular matter. Bankruptcy Rule 6004(f), which provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction," specifically authorizes private sales. Fed. R. Bankr. P. 6004(f)(1).

16.      It is well settled that the sale of assets outside of the ordinary course of business by means of a private sale can, and in appropriate cases should, be approved. *See, e.g.,* <u>In re Bakalis</u>, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the former Bankruptcy Act, the sale of estate property

under the Bankruptcy Code is conducted by a trustee, who has ample discretion …

to conduct public or private sales of estate property.") (internal quotations and

citation omitted); In re Dewey & LeBoeuf, 2012 Bankr. LEXIS 5116, at *17 (Bankr.

S.D.N.Y. Nov. 1, 2012) (authorizing private sale of art collection because the debtor

established a good business reason to proceed by private sale); Penn Mut. Life Ins.

Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship), 134 B.R. 165, 174

(Bankr. D. Md. 1991) (noting that, with respect to sales of estate property pursuant

to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private

sale ... and there is no requirement that the sale be by public auction."); see also In

re Bernard Sloane Glieberman, Case No. 15-55996-MBM (Bankr. E.D. Mich. 2018)

[Dkt. No. 533] (approving the chapter 7 trustee's private sale of the Debtor's LLC

assets outside the ordinary course of business).

17.     The Trustee, in the exercise of her sound business judgment, strongly

believes that the sale via this Sale Motion would generate more value to the Estate

than a sale at an auction or under bidding procedures, and is appropriate under the

circumstances, for several reasons including:

   a.  The Buyer provided the only valid offer to buy the Assets.

   b.  The Purchase Agreement provides for the Assets to remain at the
       Premises avoiding significant administrative expense. A
       liquidation and sale of the equipment would require removal of
       the equipment from the Premises and the attendant high risk of
       administrative claim damages incurred at the Premises
       associated with the heavy equipment removal. Additionally, any

24-50838-mlo   Doc 31   Filed 01/27/25   Entered 01/27/25 17:02:16   Page 9 of 77

alternative offer would likely factor in the cost of removal of the equipment, thereby diluting the value of such offer, which at this juncture, is very unlikely. The sale in conjunction with the assumption of the Lease also obviate any need for the Estate to incur further costly administrative fees necessitated with a prolonged sale process including the fees associated with reviewing bids, hiring specialised appraisers to compare bids for piecemeal equipment, assessing costs of removal of equipment, a commission from the sale proceeds generated to a third-party liquidator or auctioneer, etc.

c. The sale in conjunction with the assumption, assignment and cure of the Lease greatly decreases the general unsecured claim pool for the estate (since such claims will be cured by the Buyer).

d. The sale continues a business and Buyer's prompt assumption of requisite immigration obligations associated with the Specified Employees ensures the continuation of employment for two of the Debtor's hard-working employees and serves to minimize disruption to their immigration Visas.

e. Notice of the sale will be provided affording the opportunity for any interested party to object to the relief requested herein or propose an alternative transaction to acquire the Assets.[2]

## B. Notice

18. As is evidenced by the Certificate of Service attached to this Motion as **<u>Exhibit 4</u>**, due, proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to the relief requested in this Sale

---

[2] Although the Proposed Order and the Purchase Agreement do not provide that the sale is subject to higher or best offers, any party may submit a higher or best offer to purchase the Assets at any time prior to entry of the Proposed Order and the Trustee shall consider any such offers. The sale contemplated by this Motion is subject to Bankruptcy Court approval and the Trustee will supplement this Motion if any such offers are made so that the Court may take appropriate steps to ensure that the Estate accepts the offer that is highest or best. The Buyer understands the Trustee's fiduciary duty to the Estate and understands that the Court may provide for alternative procedures if another offer is made. No additional offers are expected. The Debtor operated in a niche industry and its bankruptcy filing is widely known by other businesses in the same industry who may have been interested in purchasing the Assets.

Motion has been provided in accordance with the Purchase Agreement and applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the corresponding Local Rules, to interested persons and entities, including, but not limited to: (i) the Office of the United States Trustee; (ii) Buyer's counsel; (iii) all entities known to the Trustee that assert any Interests in the Assets (or any portion thereof); (iv) the counterparties to the Assumed Contract; (v) the following relevant taxing and regulatory authorities: Canton Township, the Internal Revenue Department, the Michigan Department of Treasury and the Michigan Revenue Department; (vi) all entities that filed a notice of appearance and request for service of papers in these cases in accordance with Bankruptcy Rule 2002; and (vii) all parties listed on the Court's creditor matrix. Such notice will be good, sufficient, and appropriate under the circumstances and no other or further notice of the Sale Motion, the Purchase Agreement, or the Transactions, will be required.

**C. Fair and Reasonable Price**

19. The Trustee believes the proposed Transactions will result in fair and reasonable consideration being realized for the Assets. There were no other valid offers received by the Trustee. The equipment located at the Premises is specialized to a narrow industry, with a small market. The offer assumes the purchase of all the Assets on an "as is, where is" basis, without line-item price reductions on pieces of equipment or without leaving the Estate with unpurchased Assets that will need to

be removed from the Premises and disposed of. The Trustee has consulted with an auctioneer who advised that an auction would be unlikely to generate the overall value associated with the purchase of all equipment at the Premises, the cure of the Lease, resolve liabilities or claims with the Buyer, and the value the Estate gains by avoiding further administrative costs associated with a prolonged sale process or the removal of equipment. Therefore, the consideration to be provided by Buyer (i) is fair and reasonable, (ii) is the highest and otherwise best offer for the Assets, and (iii) will provide a greater recovery for Debtor's creditors than would be provided by any a prolonged sale process under bid procedures or an auction.

**D.      Good Faith**

20.      Finally, the Purchase Agreement was negotiated, proposed, and entered into by the Trustee and Buyer, and their respective counsel and/or advisors, without collusion, in good faith, and from arms' length bargaining positions after a 45-day negotiation process. Buyer is not an "insider" of the Debtor, as that term is defined in Bankruptcy Code section 101. Any relevant connections or relationships between any of the Trustee, the Debtor, and the Buyer have been disclosed, and the Trustee and the Buyer have not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n).

21.      The Trustee submits that the Buyer is a "good faith purchaser" and believes that the Buyer is acting in good faith within the meaning of Bankruptcy

Code section 363(m), and therefore is entitled to all the protections afforded thereby. The Buyer has proceeded in good faith in all respects in that, among other things, (i) the Buyer recognized that the Trustee was free to deal with any other party in interest in acquiring the Assets (and that the Trustee remains subject to her fiduciary duty and may seek to sell the Assets to another party making a higher and better offer at any time prior to approval of the Motion) and (ii) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer, the Trustee, and the Debtor in connection with the Purchase Agreement have been disclosed and are appropriate. The Transactions contemplated by the Purchase Agreement are entirely fair and represent fair consideration being exchanged.

22. The Trustee, in exercise of her business judgment, believes that the proposed Transactions to the Buyer on the terms set forth in the Purchase Agreement is in the best interests of the Estate and its creditors. For all the reasons set forth above, the sale of the property should be approved pursuant to Bankruptcy Code section 363(b).

## REQUEST FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

23. Pursuant to Bankruptcy Code section 363(f), a trustee may sell property of the estate free and clear of all liens, claims, encumbrances, redemption rights, and other interests asserted in or against the property being sold if: (1) a sale free and clear of the interest is permitted under applicable non-bankruptcy law; (2) the party

asserting an interest consents to the sale; (3) the interest is a lien and the sale price exceeds the aggregate value of all liens on the property; (4) the interest is subject to a bona fide dispute; or (5) the party asserting the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

24. Except as expressly provided in the Purchase Agreement or this Sale Motion, to the fullest extent permitted under the Bankruptcy Code, the Assets are to be sold free and clear of all liens (including, without limitation, mechanics', materialmens', and other consensual and non-consensual liens and statutory liens), claims (including any "claim" as defined in Bankruptcy Code section 101(5)), encumbrances, interests, obligations, rights, pledges, mortgages, deeds of trust, rights of first offer and/or first refusal, buy/sell agreements, options, charges, community and other marital property interests, hypothecations, Taxes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, security interests, liabilities, debt obligations, penalties, charges, judgments, guaranties, and indemnity obligations, Orders, conditional sale or other title retention agreements and other similar impositions, imperfections or defects of title or restrictions on transfer or use, equitable interests and all other restrictions and covenants with respect to, and conditions governing, the voting, transfer, receipt of income and/or exercise of any other attribute of ownership, in each case, of whatever

kind, nature, or description in, against, or with respect to any of the Assets, having arisen, existed, or accrued prior to the Closing Date, whether direct or indirect, absolute or contingent, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, material or non-material, disputed or undisputed, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise, including Claims or liabilities arising under doctrines of successor liability, or *de facto* merger, and including the IRS Lien (as defined below) (other than the Assumed Liabilities, collectively, "Interests"), which shall be extinguished upon the Closing of the Transactions, except as set forth below with respect to the IRS Lien and the security interest, if any, in the Grinding CNC Machine (the only two potential liens identified by the Trustee).

26. To the extent that a properly perfected security Interest filed against the Grinding CNC Machine by Biesse America Inc. has not been satisfied or terminated, the Grinding CNC Machine shall be transferred to Buyer subject to such Interest.

26. To the extent that the certain Interest filed by the Internal Revenue Service ("IRS") via its Notice of Federal Tax Lien filed with the Michigan Department of State under the Uniform Commercial Code on June 5, 2024, filing number 20240605000868-9 (the "IRS Lien") has not yet been previously satisfied,

the IRS Lien shall attach to the net cash proceeds of the Transactions received by the Estate, and that in no event shall Buyer or any of its affiliates be liable for the IRS Lien. The IRS shall be required to timely file a proof of claim to receive a distribution for the IRS Lien if the IRS Lien has not been previously satisfied.

27. Buyer would not have entered into the Purchase Agreement and would not consummate the Transactions contemplated thereby (by paying the purchase price and assuming the Assumed Liabilities) if the sale of the Assets to Buyer, and the assumption and assignment of the Lease to the Buyer, were not free and clear of all Interests (except as set forth herein), or if Buyer, its affiliates, or their respective officers, directors or shareholders, or the Assets, would, or in the future could be liable for any Interests, or could or would be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Interests.

28. Not selling the Assets free and clear of any and all Interests (except as set forth herein) would adversely impact the Estate, as it would generate substantially less consideration.

29. The Trustee may sell the Assets free and clear of all Interests (except as set forth herein) because, in each case, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied. Those holders of Interests against the Estate or any of the Assets who did not object, or who withdrew

their objections, to the Transactions or the Sale Motion are deemed to have consented to the Transactions pursuant to Bankruptcy Code section 363(f)(2). All other holders of Interests, including whose who maintained and did not withdraw objections to the Transactions or the Sale Motion, if any, fall within one or more of the other subsections of Bankruptcy Code section 363(f).

30. Accordingly, the Trustee seeks authority to sell the Assets pursuant to the terms of the Purchase Agreement free and clear of any Interests (except as otherwise provided in the Purchase Agreement).

## ASSUMPTION AND ASSIGNMENT OF THE LEASE

31. The Purchase Agreement includes the assumption and assignment of the lease for the Premises (the "Lease" or the "Assumed Contract"), where the Debtor's business houses all of the Assets and previously operated its business.

32. Bankruptcy Code section 365(a) allows the Trustee, subject to the Court's approval, to assume any executory contract or lease of the estate after meeting the requirements of Bankruptcy Code section 365(b)(1) as to any executory contract in default.

33. The Trustee believes, in the exercise of her sound business judgment, that the assumption and assignment of the Lease to Buyer will significantly reduce claims against the Estate. Since the Petition Date, the Estate has continued to house its Assets at the Premises, and therefore has potentially incurred liabilities for

postpetition rent. The Debtor was also behind on prepetition rent as of the Petition Date. As described in the Purchase Agreement, the Buyer will cure these amounts upon its assumption of the Lease and by the payment of cash related to the Shared Services Agreement to the Trustee.

34. If the Transactions do not close, the Trustee would likely be unable to recover the amounts agreed to under the Purchase Agreement to settle claims under the Shared Space Agreement and the Shared Personnel Agreement, and thereby pay the Landlord.

35. Further, the assumption and assignment of the Lease will reduce significant expenses that the Estate could otherwise incur related to the rejection of the Lease and possible removal all of the equipment located inside the Premises. Any such removal would need to be carefully handled to not harm the Premises, would prolong the duration of the case, and would be costly. If the Buyer is able to purchase the Assets and assume the Lease, it will reduce potential administrative burdens of the Estate.

36. Therefore, the Trustee submits that the requirements of Bankruptcy Code section 365(b)(1) have been met and the Trustee respectfully requests authority to assume and assign the Lease to Buyer on the terms described in the Purchase Agreement.

## EMPLOYMENT OF THE SPECIFIED EMPLOYEES

37.    Pursuant to the Purchase Agreement, the Buyer seeks to assume all requisite immigration obligations associated with the employment of the Specified Employees, who are foreign nationals and were employed by the Debtor prior to its cessation of operations ahead of filing this chapter 7 case. As set forth in the Purchase Agreement, the Specified Employees possess talent and expertise necessary to operate certain of the Assets. As part of Buyer's Assumed Liabilities, at the Closing, the Buyer will assume all requisite immigration obligations associated with transferring each Specified Employee's Visa to the Buyer.

38.    The Trustee submits, in the exercise of her sound business judgement, that the offer presented under the Purchase Agreement will likely to be the only one to present this type of value and preserve the livelihoods of two of the Debtor's former employees.  Therefore, the Trustee respectfully requests that the Court enter the Proposed Order approving the Transactions contemplated under the Purchase Agreement.

*        *        *

WHEREFORE, the Trustee respectfully requests that this Court enter the Proposed Order and approve and authorize (1) the sale of the Assets contemplated under the Purchase Agreement, free and clear of all Interests, (2) the assumption and assignment of the Lease, (3) the transfer of the IRS Lien to the proceeds of the Transactions and extinguishment of all other liens (except with respect to the Grinding CNC Machine, if any), and (4) grant other such related relief.

Respectfully submitted,

Dated: January 27, 2025

/s/ Sandra L. O'Connor
SANDRA L. O'CONNOR
Sandra O'Connor Law, PLLC
100 N. Pond Drive, Suite A
Walled Lake, MI 48390
(248) 817-6669
sandra@sandraoconnorlaw.com
(P70984)

<u>**EXHIBIT 1**</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN THE MATTER OF:

AGP E-GLASS CO.,                                     Chapter 7
                                                     Case No. 24-50838-MLO
        Debtor.                                      Hon. Maria L. Oxholm
_____/

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 AUTHORIZING (1)**
**THE SALE OF DEBTOR'S PROPERTY RELATED TO THE CANTON,**
**MICHIGAN PREMISES FREE AND CLEAR OF LIENS, CLAIMS,**
**INTERESTS AND ENCUMBRANCES, (2) THE TRANSFER OF LIEN TO**
**SALE PROCEEDS, (3) THE ASSUMPTION AND ASSIGNMENT OF**
<u>**EXECUTORY CONTRACTS, AND (4) GRANTING RELATED RELIEF**</u>

Upon the *Chapter 7 Trustee's Motion for Order Pursuant to 11 U.S.C. §§ 105, 363 and 365 Authorizing (1) the Sale of Debtor's Property Related to the Canton, Michigan Premises Free and Clear of Liens, Claims, Interests and Encumbrances, (2) the Assumption and Assignment of Executory Contracts, (3) the Transfer of a Lien to Sale Proceeds, and (4) Granting Related Relief* [ECF No. 31] (the "<u>Sale Motion</u>") of K. Jin Lim, solely in her capacity as the duly appointed Chapter 7 trustee of the bankruptcy estate (the "<u>Estate</u>") of the above-captioned Debtor (as applicable, the "<u>Trustee</u>" or "<u>Seller</u>") requesting entry of this Order (this "<u>Sale Order</u>") pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") (a) authorizing and approving the sale of certain Assets related to the Debtor's Canton, Michigan premises, free and clear of Interests (except as set forth in this Sale Order), pursuant to that certain Transfer and Purchase Agreement (the "Purchase Agreement"),[13] dated January 27, 2025, by and between the Trustee and NxLite Corporation (or its designee) ("Buyer"), as may be amended from time to time, (b) authorizing and approving the assumption and assignment of the Assumed Contracts in connection with the Transactions; (c) authorizing that the IRS Tax Lien (as defined below) be transferred to attach solely to the proceeds of the Transactions; (d) authorizing and approving the Transactions contemplated under the Purchase Agreement, and (e) granting related relief; and this Court having considered the Sale Motion; and due and proper notice of the Sale Motion, Purchase Agreement and the proposed Transactions having been given; and no objections to the Sale Motion having been filed; and after due deliberation thereon, good and sufficient cause appearing therefor; and it appearing that the relief requested in the Sale Motion, insofar as it pertains to this Sale Order, is in the best interests of the Estate, its creditors, and other parties in interest; and the Court being otherwise fully advised in the premises:

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

---

[1] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the Purchase Agreement.

**<u>Determination with Respect to the Findings of Fact and Conclusions of Law</u>**

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.    The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code sections 105(a) and 363(b), (f), and (m) and 365 together with Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014 and corresponding local rules.

D.    The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Any findings of fact or conclusions of law stated by the Court on the record at the Hearing on the Sale Motion (if any) are hereby incorporated to the extent they are not inconsistent herewith.

E. The Assets set forth in the Purchase Agreement constitute property of the Estate and title to the Assets is vested in the Estate within the meaning of Bankruptcy Code section 541(a).

**Notice of the Sale and the Hearing (if any)**

F. As evidenced by the Proofs of Service on file with this Court, due, proper, timely, adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to the Purchase Agreement and the Sale Motion and the relief requested therein, have been provided in accordance with the applicable provisions of the Bankruptcy Code, including sections 102(1), 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014, and the corresponding Local Rules, and in compliance with the Purchase Agreement, to interested persons and entities, including, but not limited to: (i) the Office of the United States Trustee; (ii) Buyer's counsel; (iii) all entities known to the Trustee that assert any Interests in the Assets (or any portion thereof); (iv) the counterparties to any Assumed Contract(s); (v) the following relevant taxing and regulatory authorities: Canton Township, the Internal Revenue Department, the Michigan Department of Treasury and the Michigan Revenue Department; (vi) all entities that filed a notice of appearance and request for service of papers in these cases in accordance with Bankruptcy Rule 2002; and (vii) all parties listed on the Court's matrix of creditors as indicated on the Certificate of Service to the Sale Motion filed by the Trustee. Such notice was good, sufficient, and appropriate under

4

the circumstances and no other or further notice of the Sale Motion, the Purchase Agreement, the Transactions, is or will be required.

G.      The Trustee has articulated good and sufficient reasons for the Court to grant the relief requested in the Sale Motion.

H.      The disclosures made by the Trustee concerning the Sale Motion, the Purchase Agreement, the Transactions, and the hearing on the Sale Motion (the "Hearing") (if any) were good, complete and adequate.

**Good Faith of Buyer**

I.      The Purchase Agreement was negotiated, proposed, and entered into by the Trustee and Buyer without collusion, in good faith, and from arm's length bargaining position.  Buyer is not an "insider" of the Debtor, as that term is defined in Bankruptcy Code section 101.  Any relevant connections or relationships between any of the Trustee, Debtor and Buyer have been disclosed, and the Trustee and Buyer have not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n).

J.      The Transactions contemplated by the Purchase Agreement and this Sale Order are entirely fair and represent fair consideration being exchanged.

K.      Buyer is purchasing the Assets in good faith and is a good-faith buyer within the meaning of Bankruptcy Code section 363(m) and is, therefore, entitled to

the full protection of Bankruptcy Code section 363(m), and otherwise has proceeded in good faith in all respects in connection with this case.

**No Fraudulent Transfer**

L.   The consideration to be provided by Buyer under the Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Sale Assets; (iii) will provide a greater recovery for Debtor's creditors than would be provided by any other practical available alternative; and (iv) constitutes a reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

M.   The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

**Validity of Transfer**

N.   The Trustee has full power and authority to execute and deliver the Purchase Agreement on behalf of the Estate and all other documents contemplated thereby, and no further consents or approvals are required for the Trustee to consummate, on behalf of the Estate, the Transactions contemplated by the Purchase Agreement and this Sale Order.

O.      The transfer of the Assets to Buyer, as of the date that the Transactions are effectuated, will be a legal, valid, and effective transfer of the Estate's interests in such assets and will vest Buyer with all right, title, and interest of the Estate to the Assets free and clear of all any Interests.

**No Successor Liability**

P.      Buyer is not a mere continuation of the Debtor and there is no continuity of enterprise between the Debtor and Buyer. Buyer is not a mere continuation of the Debtor or its Estate by any reason or any theory of law or equity, and the Transactions contemplated under the Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of Buyer and the Debtor.

Q.      Except for the contractual commitments of Buyer under the Assumed Liabilities, Buyer is not, and shall not be considered or deemed, as a result of any action taken in connection with the sale transaction, to be a successor in interest of the Debtor or its Estate for any purpose, including but not limited to under any federal, state, or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Estate's liability under such law, rule, or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to

7

the Estate's liability under such law, rule or regulation or doctrine and Buyer and its affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act (the "<u>WARN Act</u>"), 929 U.S.C. §§ 210 *et seq*., or the Comprehensive Environmental Response Compensation and Liability Act, and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, the Fair Labor Standards Act, the Persons with Disabilities Civil Rights Act, and/or the Elliott-Larsen Civil Rights Act. Except for the (i) Assumed Liabilities, and (ii) transfer of the Assets to Buyer, the Transaction will not subject Buyer to any liability whatsoever with respect to the operation of the Debtor's business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity.

**<u>Bankruptcy Code Section 363(f) Is Satisfied</u>**

R.      Except as expressly provided in the Purchase Agreement or this Sale Order, to the fullest extent permitted under the Bankruptcy Code, the Assets shall be sold free and clear of all liens (including, without limitation, mechanics', materialmens', and other consensual and non-consensual liens and statutory liens), claims (including any "claim" as defined in Bankruptcy Code section 101(5), a "Claim"), encumbrances, interests, obligations, rights, pledges, mortgages, deeds of trust, rights of first offer and/or first refusal, buy/sell agreements, options, charges, community and other marital property interests, hypothecations, Taxes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, security interests, liabilities, debt obligations, penalties, charges, judgments, guaranties, and indemnity obligations, Orders, conditional sale or other title retention agreements and other similar impositions, imperfections or defects of title or restrictions on transfer or use, equitable interests and all other restrictions and covenants with respect to, and conditions governing, the voting, transfer, receipt of income and/or exercise of any other attribute of ownership, in each case, of whatever kind, nature, or description in, against, or with respect to any of the Assets, having arisen, existed, or accrued prior to the Closing Date, whether direct or indirect, absolute or contingent, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or

9

unperfected, material or non-material, disputed or undisputed, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise, including Claims or liabilities arising under doctrines of successor liability, or *de facto* merger, and including the IRS Lien (as defined below) (other than the Assumed Liabilities, collectively, "Interests"), which Interests are hereby extinguished, except as set forth below with respect to the IRS Lien and the security interest, if any, in the Grinding CNC Machine listed in Schedule A-1 to the Purchase Agreement.

S.      Notwithstanding any other provision of this Sale Order, to the extent that a properly perfected security Interest filed against the Grinding CNC Machine listed in Schedule A-1 to the Purchase Agreement has not been satisfied or terminated, the Grinding CNC Machine shall be transferred to Buyer subject to such Interest.

T.      Buyer would not have entered into the Purchase Agreement and would not consummate the Transactions contemplated thereby (by paying the purchase price and assuming the Assumed Liabilities) if the sale of the Assets to Buyer, and the assumption, assignment and sale of the Assumed Contract(s) to Buyer, were not free and clear of all Interests (except as set forth herein), or if Buyer, its affiliates, or their respective officers, directors or shareholders, or the Assets, would, or in the future could be liable for any Interests, or could or would be required to satisfy in

any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Interests.

U.      Not selling the Assets free and clear of any and all Interests (except as set forth herein) would adversely impact the Estate, and the sale of the Assets other than as free and clear of all Interests would be of substantially less value to the Estate.

V.      The Trustee may sell the Assets free and clear of all Interests (except as set forth herein) because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those holders of Interests against the Estate or any of the Assets who did not object, or who withdrew their objections, to the Transactions or the Sale Motion are deemed to have consented to the Transactions pursuant to Bankruptcy Code section 363(f)(2).  All other holders of Interests, including whose who maintained and did not withdraw objections to the Transactions or the Sale Motion, if any, fall within one or more of the other subsections of Bankruptcy Code section 363(f).

**Circumstances Exist for an Immediate Sale**

W.      Time is of the essence in consummating the Sale.

X.      The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), and 363(m),

and all the applicable requirements of such sections have been complied with in respect of the Transactions.

**IT IS HEREBY ORDERED as follows:**

1. The Sale Motion is granted as set forth in this Sale Order.

2. Pursuant to Bankruptcy Code section 363(b), the Trustee is authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Transactions (including the sale of the Assets) to Buyer pursuant to and in accordance with the terms and conditions of the Purchase Agreement, (b) close the Transactions as contemplated in the Purchase Agreement and this Sale Order, (c) execute and deliver, perform under, consummate, implement and close fully the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Transactions, including any other transaction documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by Purchase Agreement and such other transaction documents, (d) assume, assign and transfer the Assumed Contract(s), without further application to or order of this Court and upon the terms and conditions of Purchase Agreement, (e) perform any remaining obligations specified in the Purchase Agreement after the Closing, and (f) otherwise implement and provide Buyer and the Estate with the full

benefit of the Transactions contemplated by the Purchase Agreement and this Sale Order.

3.     Under Bankruptcy Code sections 105(a), 363(f), and 365(b), upon the Closing: (i) the transfer of the Assets to Buyer under the Purchase Agreement will constitute a legal, valid, and effective transfer of the Assets and will vest Buyer with all right, title, and interest in and to the Assets; (ii) the Assets will be transferred to Buyer free and clear of all Interests against the Assets, except for Assumed Liabilities and the Grinding CNC Machine, in accordance with Bankruptcy Code section 363(f), and such Interests are hereby extinguished (and except for the IRS Lien); and (iii) the Assumed Contract(s) will be deemed assumed and assigned to Buyer on the Closing Date, as provided in and contemplated by the Purchase Agreement. Without limiting the generality of the preceding sentence, the transfer of the Assets will be free and clear of all Interests of any government or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state, or local, or any agency, instrumentality or authority thereof, or any court or arbiter (public or private), except as provided below in this Sale Order.

4.     Notwithstanding other provisions of this Sale Order, to the extent that the certain Interest filed by the Internal Revenue Service ("IRS") via its Notice of Federal Tax Lien filed with the Michigan Department of State under the Uniform

Commercial Code on June 5, 2024, filing number 20240605000868-9 (the "IRS Lien") has not yet been previously satisfied, the IRS Lien shall attach to the net cash proceeds of the sale. The IRS shall be required to timely file a proof of claim to receive a distribution for the IRS Lien if the IRS Lien has not been previously satisfied.

5. The Trustee is directed to pay the cure amounts for the Lease as set forth in Section 3.3 of the Purchase Agreement to the Landlord at the Closing.

6. Except as expressly provided by the Purchase Agreement with respect to the Assumed Liabilities, all persons and entities (including, but not limited to, all noteholders, warrant holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, current or former customers, vendors, employees, trade creditors, litigation claimants, judgment creditors, and other creditors) holding or asserting Interests in all or any portion of the Assets and/or arising under or out of, in connection with, or in any way relating to the Debtor or its Estate, the Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Assets to Buyer are hereby forever barred, estopped and permanently enjoined from asserting against Buyer or its successors or assigns, its property or the Assets, such persons' or entities' Interests. Following the Closing, no holder of any Interest shall interfere with Buyer's title to or use and enjoyment of

the Assets based on or related to any such Interest, or based on any action Debtor or the Trustee may take in this chapter 7 case.

7. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Assets to Buyer in accordance with the terms of the Purchase Agreement and this Sale Order.

8. All persons and entities that are in possession of some or all of the Assets after the Closing, including those Assets listed on Schedule A-1 to the Purchase Agreement, are hereby directed to surrender possession of such Assets to Buyer at the Closing. If there is any dispute as to what constitutes an Asset, the Court shall retain jurisdiction to resolve such dispute.

9. Buyer shall assume the Assumed Liabilities with respect to its employment of the Specified Employees, who were foreign national employees of the Debtor. As set forth in the Purchase Agreement, the Specified Employees possess talent and expertise necessary to operate certain of the Assets. As part of Buyer's Assumed Liabilities, at the Closing, Buyer assumes all requisite immigration obligations associated with transferring each Specified Employee's Visa to Buyer.

10. Upon Closing, this Sale Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Assets pursuant to the terms of the Purchase Agreement.

11. This Sale Order is and will be effective as a determination that all Interests will be and are, without further action by any person or entity, released with respect to the Assets as of Closing. A certified copy of this Sale Order may be filed with the Michigan Department of State to evidence the fact that all Interests with respect to the Assets have been extinguished, discharged and released.

12. As to the Assumed Contract(s), (a) the sale, assumption and assignment, and transfer is approved pursuant to Bankruptcy Code sections 363 and 365; (b) Seller is authorized in accordance with Bankruptcy Code sections 365(b)(1) and (f)(2), to: (i) assume the Assumed Contract(s); (ii) sell, assign and transfer to Buyer each of the Assumed Contract(s) free and clear of all Interests, including Seller's rights to prepayments, installment payments, and deposits made under or related to such Assumed Contract; and (iii) execute and deliver to Buyer, such assignment documents as may be necessary to sell, assign and transfer the Assumed Contract(s); (c) all defaults or other obligations or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2) are deemed cured upon the payments to be made by Seller and Buyer set forth in the Purchase Agreement; and (d) to the extent applicable, Buyer has provided adequate assurance of its future performance of the Assumed Contract(s) and the proposed assumption and assignment of the Assumed Contract(s) satisfies in all respects the requirements under Bankruptcy Code section 365.

13. Seller is directed to pay the post-petition rent owed to the Landlord under the Lease from December 1, 2024, through January 31, 2025, from the funds specified in the Purchase Agreement.

14. Effective upon the Closing Date, (a) the Shared Services Agreement shall be deemed terminated as of January 31, 2025, and (b) the Shared Personnel Agreement shall be deemed terminated as of the Petition Date, and (c) the amounts set forth in the Purchase Agreement with respect to the Shared Services Agreement shall be a settlement of all amounts that may be owed by Buyer under both the Shared Services Agreement and the Shared Personnel Agreement.

15. Effective upon the Closing Date, the Trustee, in her capacity as the duly appointed chapter 7 trustee of the Debtor's Estate, shall forever and irrevocably be deemed to have released, discharged, and acquitted Buyer and each of its former, current, and future officers, employees, directors, agents, representatives, owners, members, shareholders, partners, financial and other advisors, investors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (and for clarity, solely as such party has served in such capacity for Buyer), from any and all Claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, reasonable attorneys' fees,

costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description (collectively, the "Released Claims"); *provided*, *however*, nothing herein shall affect the ability of the Trustee to enforce the terms of the Purchase Agreement and this Sale Order.

16. Effective upon the Closing Date, Buyer shall forever and irrevocably be deemed to have released, discharged, and acquitted the Trustee, in her capacity as the duly appointed chapter 7 trustee of the Estate, from the Released Claims; *provided*, *however*, nothing herein shall release any Released Claims of Buyer, its designees, permitted assigns or successors, with respect to any Claims or causes of action brought in connection with the Assets, the Purchase Agreement or the Sale Order, and *provided*, *further*, that nothing herein shall affect the ability of Buyer, its designees, permitted assigns or successors to enforce the terms of the Purchase Agreement and this Sale Order.

17. No sale, transfer or other disposition of the Assets will subject Buyer to any liability for Claims, obligations, or encumbrances asserted against the Debtor or its Estate or its interests in the Assets—by reason of such transfer under any laws, including any bulk-transfer laws or any theory of successor or transferee liability,

antitrust, environmental, product line, *de facto* merger, or substantial continuity or similar theories. By virtue of the consummation of the Transactions contemplated in the Purchase Agreement, (i) Buyer is not a mere continuation of the Debtor or its Estate and there is no continuity of enterprise between Buyer and the Debtor, (ii) Buyer is not holding itself out to the public as a continuation of the Debtor or its Estate, including, but not limited to, any warranty or similar obligations, (iii) Buyer's operation of the Assets are not deemed a continuation of the Debtor's business, and (iv) the Transactions do not amount to a consolidation, merger, or *de facto* merger of Buyer and the Debtor or its Estate. Accordingly, Buyer is not and shall not be deemed a successor to the Debtor or its Estate by reason of any theory of law or equity, except with respect to the obligations specified in this Sale Order, Buyer's acquisition of the Assets shall be free and clear of any "successor liability" Claims of any nature whatsoever, and all "persons" (as defined in Bankruptcy Code section 101(41)) are enjoined from asserting against Buyer, or its successors or assigns, any claim or cause of action based upon the theory or "successor liability".

18. The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential Claims of successor or vicarious liability of Buyer, which releases shall be deemed to have been given in favor of Buyer by all holders of Interests against or in the Debtor or any of the Assets, and which releases shall exclude Buyer's obligations under this Sale Order.

19. To the greatest extent available under applicable law, Buyer shall be authorized, as the Closing of the Transactions contemplated by this Sale Order, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtor with respect to the Assets and Assumed Contract, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the date the Transactions are closed. To the extent provided by Bankruptcy Code section 525, no governmental unit may revoke or suspend any permit or license related to the operation of the Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Debtor's chapter 7 case. For the avoidance of doubt, nothing in this Sale Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

20. The consideration provided by Buyer for the Assets is for all purposes valuable and fair consideration under the Bankruptcy Code and any other applicable law, and the Transactions may not be avoided, or costs or damages imposed or awarded, under Bankruptcy Code section 363(n) or any other provision of the Bankruptcy Code.

21. The Transactions have been, and are undertaken by Seller and Buyer in good faith, as that term is used in Bankruptcy Code section 363(m) and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions will not affect the validity of the sale of the Assets to Buyer, unless such authorization is duly stayed pending such appeal. Buyer is in all respects a "good faith purchaser" of the Assets and Buyer is therefore entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m). In the event of any stay, modification, reversal or vacation of this Sale Order, then notwithstanding any such stay, modification, reversal or vacation, all obligations incurred by Seller under this Sale Order or the Purchase Agreement prior to the effective date of such stay, modification, reversal or vacation will be governed in all respects by the original provisions of this Sale Order, and Buyer will be entitled to the rights, privileges and benefits granted in this Sale Order with respect to all such obligations.

22. This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or

otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement. All entities are authorized and specifically directed to strike all recorded Interests against the Assets from their records, official or otherwise.

23. If any person or entity that has financing statements, mortgages, mechanics liens, *lis pendens*, or other documents or agreements evidencing Interests against the Assets and will not have delivered to the Trustee and Buyer prior to Closing, in proper form for filing and executed by the appropriate parties, releases of all such Interests that the person or entity has with respect to the Assets, then: (i) the Trustee or Buyer are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets; (ii) Buyer is authorized to file, register, or otherwise record a certified copy of this Sale Order that once filed, registered, or otherwise recorded, will constitute conclusive evidence of the release of all Interests in the Assets as of Closing, of any kind or nature whatsoever; and (iii) may seek in this Court (or, if this Court finds it does not have exclusive jurisdiction, another applicable court) to compel appropriate parties to execute and/or file termination statements, instruments of satisfaction, and

releases of all Interests that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Assets.

24. All federal, state, county and local governmental agencies or departments are ordered and directed to accept all filings necessary and appropriate to consummate the Transactions.

25. The terms and provisions of the Purchase Agreement, the ancillary agreements, and this Sale Order will be binding in all respects upon, and will inure to the benefit of the Trustee, Estate, Buyer and its respective affiliates, designees, successors and assigns, and any affected third parties.

26. The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, _provided_ that any such modification, amendment, or supplement does not have a material adverse effect on the Estate.

27. The failure specifically to include any particular provisions of the Purchase Agreement or any ancillary agreement to the Purchase Agreement in this Sale Order will not diminish or impair the effectiveness of such provisions. It being the intent of the Court that the Purchase Agreement and any ancillary agreements be authorized and approved in their entirety.

24-50838-mlo    Doc 31    Filed 01/27/25    Entered 01/27/25 17:02:16    Page 43 of 77

28. To the extent of any inconsistency between the provisions of this Sale Order and the Purchase Agreement, the provisions contained in the Sale Order will govern.

29. In the event that this chapter 7 case is dismissed, a dismissal of this case will not affect in any manner the rights of Buyer under the Purchase Agreement or this Sale Order, or any other agreements executed by the Trustee in conjunction with the Transactions, and all of the rights and remedies of Buyer under the Purchase Agreement, this Sale Order, and all other related or ancillary agreements executed in connection with the Transactions will remain in full force and effect as if the case had not been dismissed or converted or a subsequent trustee had not been appointed.

30. The provisions of this Sale Order are non-severable and mutually dependent.

31. Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Rule 62(a) of the Federal Rules of Civil Procedure, this Sale Order will not be stayed for fourteen (14) days after its entry, but will be effective and enforceable immediately upon its entry.

32. The Court shall retain exclusive jurisdiction over all matters arising from or related to the interpretation and implementation of this Sale Order, and to interpret, implement and enforce the terms and provisions of all agreements executed in connection with this Sale Order, and to adjudicate any and all disputes concerning

or relating in any way to this Sale Order, including to compel delivery of the Assets, to protect Buyer and its assets, including the Assets, against any Interests and successor and transferee liability, and to enter orders, as appropriate, pursuant to Bankruptcy Code sections 105, 363, 365, or other applicable provisions of the Bankruptcy Code to transfer the Assets and Assumed Contract(s) to Buyer.

25

<u>**EXHIBIT 2**</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN THE MATTER OF:

AGP E-GLASS CO.,                                 Chapter 7
                                              Case No. 24-50838-MLO

       Debtor.                            Hon. Maria L. Oxholm
_____/

<u>**NOTICE OF CHAPTER 7 TRUSTEE'S SALE MOTION**</u>

Sandra O'Connor Law, PLLC, attorney for K. Jin Lim, the Chapter 7 Trustee (the "<u>Trustee</u>") for the estate of the above captioned debtor (the "<u>Debtor</u>") has filed papers with the court entitled *Chapter 7 Trustee's Motion for Order Pursuant to 11 U.S.C. §§ 105, 363 and 365 Authorizing (1) the Sale of Debtor's Property Related to the Canton, Michigan Premises Free and Clear of Liens, Claims, Interests and Encumbrances, (2) the Assumption and Assignment of Executory Contracts, (3) the Transfer of a Lien to Sale Proceeds, and (4) Granting Related Relief* (the "<u>Motion</u>").

**<u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant the relief sought in the Motion, or if you want the Court to consider your views on the Motion, within twenty-one (21) days of the date of this Notice, you or your attorney must:

1.      File with the Court a written response or an answer, explaining your position at:[1]

**United States Bankruptcy Court**
211 W. Fort Street
Detroit, Michigan 48226

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c), and (e)

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

**You must also send a copy to:**

Sandra L. O'Connor, Esq.
100 N. Pond Drive, Suite A, Walled Lake, MI 48390

Tamar Dolcourt, Esq.
500 Woodward Ave. Suite 2700, Detroit, MI 48226;

Oksana Koltko Rosaluk, Esq. and Katie Allison, Esq.
444 W. Lake Street, Suite 900, Chicago, Illinois 60606;

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

**Further, if you or your attorney do not timely file opposition to the relief requested by the Motion, the court may decide that you are barred from objecting to the Motion, and the court may deem it that you "consent" to the Transactions contemplated in the Purchase Agreement for purposes of 11 U.S.C. § 363(f)(2).**

The motion states in relevant part:[1]

1. The Trustee has entered into a Transfer and Purchase Agreement (the "Purchase Agreement")[2] with NxLite Corporation ("Buyer") for the sale of the Debtor's assets located at and related to the Debtor's Canton, Michigan premises

---

[1] The following is not a full description of the relief requested in the Motion. Additional details regarding the Purchase Agreement and the proposed Transactions can be found in the Motion filed contemporaneously herewith.

[2] All capitalized terms used but not defined in this notice have the meaning given in the Purchase Agreement, which is attached to the Motion.

(all as further described in the Purchase Agreement, the "Assets"), and the assumption and assignment of a certain executory contract to Buyer, for $425,000.00 in cash, the retainment of a $100,000.00 security deposit by the Trustee, plus the assumption of certain liabilities (the "Purchase Price").

2.     If approved, the sale to Buyer will be free and clear of all claims, liens, interests and encumbrances on the Assets pursuant to 11 U.S.C. §§ 105, 363, with all liens, claims, interests and encumbrances on the Assets being terminated and extinguished upon the Closing of the Transactions, except for the IRS Lien, which, to the extent that it has not been satisfied prior to the Closing, will attach to the sale proceeds, and except for any properly perfected security interest in the Grinding CNC Machine listed in Schedule A-1 to the Purchase Agreement, which will transfer to Buyer.

3.     The Trustee believes that Purchase Price is the highest and otherwise best offer for the sale of the Assets and will maximize the value of the Estate for the benefit of the Debtor's creditors.

**A copy of the Motion and this notice can be found through PACER on the Court's website, https://mieb.uscourts.gov (at a fee, registration required) and on file with the Clerk of the Court, located at 211 W. Fort Street, Detroit, Michigan 48226.**

Dated: January 27, 2025

 /s/ Sandra L. O'Connor
SANDRA L. O'CONNOR
Sandra O'Connor Law, PLLC
100 N. Pond Drive, Suite A
Walled Lake, MI 48390
(248) 817-6669
sandra@sandraoconnorlaw.com
(P70984)

**EXHIBIT 4**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN THE MATTER OF:

AGP E-GLASS CO.,            Chapter 7
                               Case No. 24-50838-MLO

       Debtor.                     Hon. Maria L. Oxholm

_____/

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2025, I electronically filed the (i) *Chapter 7 Trustee's Motion for Order Pursuant to 11 U.S.C. §§ 105, 363 and 365 Authorizing (1) the Sale of Debtor's Property Related to the Canton, Michigan Premises Free and Clear of Liens, Claims, Interests and Encumbrances, (2) the Assumption and Assignment of Executory Contracts, (3) the Transfer of a Lien to Sale Proceeds, and (4) Granting Related Relief* [ECF no. 31] (the "Sale Motion"), (ii) the Proposed Order, (iii) the Notice, (iv) the Certificate of Service, and (v) the Purchase Agreement; with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Office of the U.S. Trustee            K. Jin Lim, Esq.

Alan C. Hochheiser, Esq.            Tamar Dolcourt, Esq.

Richard James Bernard, Esq.

and I also hereby certify that on January 27, 2025, I mailed by First Class Mail with the United States Postal Service (i) the Sale Motion, (ii) the Proposed Order, (iii) the Notice, (iv) the Certificate of Service, and (v) the Purchase Agreement, to the following parties and non-ECF participants:

| | |
|---|---|
| Civil Process Clerk<br>U.S. Attorneys Office<br>211 W. Fort St., Suite 2001<br>Detroit, MI 48226 | James R. McHenry, III<br>Acting Attorney General<br>United States Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530 |
| Internal Revenue Service<br>1111 Constitution Ave. NW<br>Washington, DC 20224 | Dian Slavens, Township Treasurer<br>Canton Township<br>1150 S. Canton Center Road<br>Canton, MI 48188 |
| Dian Slavens, Township Treasurer<br>Canton Township<br>P.O. Box 87010<br>Canton, MI 48187 | Michigan Department of Treasury<br>Lansing, MI 48922 |
| Dana Nessel, Attorney General<br>G. Mennen Williams Building<br>525 W. Ottawa Street<br>P.O. Box 30212<br>Lansing, MI 48909 | Wayne Segal, Esq.<br>Dawda Mann Mulcahy & Sadler, PLC<br>39533 Woodward Ave., Ste. 200<br>Bloomfield Hills, MI 48304 |
| Vail Village, LLC<br>c/o Paul Navetta, Registered Agent<br>12955 23 Mile Road<br>Shelby Township, MI 48315 | Biesse America Inc.<br>c/o Tito Mazzetta, Registered Agent<br>4477 East Paris, S.E.<br>Kentwood, MI 49512 |
| DLA Piper LLP (US)<br>444 West Lake Street<br>Suite 900<br>Chicago, IL  60606-0089<br>Attn: Oksana Koltko Rosaluk | |

and I also hereby certify that on January 27, 2025, I mailed by First Class Mail with the United States Postal Service Notice of Chapter 7 Trustee's Sale Motion to the following non-ECF participants:

All parties listed on the attached matrix of creditors except as indicated.

2

Dated: January 27, 2025

/s/ Sandra L. O'Connor
SANDRA L. O'CONNOR
Sandra O'Connor Law, PLLC
100 N. Pond Drive, Suite A
Walled Lake, MI 48390
(248) 817-6669
sandra@sandraoconnorlaw.com
(P70984)

3

Label Matrix for local noticing
0645-2
Case 24-50838-mlo
Eastern District of Michigan
Detroit
Mon Jan 27 14:45:36 EST 2025

321 Logistics
719 Holly Street
ATTN: Candace Leaphart
Columbia, SC 29205-1865

3E Nano Corporation
74509 - 270 The Kingsway
Toronto, ON M9A 3T0

AGP E-Glass Co.
41600 Haggerty Circle S
Canton, MI 48188-2227

AGP EUROPE GMBH
Arnold-Sommerfeld-Ring 16
52499 Baesweiler, Germany

AGP PER S.A.C.
Av. Guillermo Dansey 1846
Lima, Peru

AGP Worldwide Operations GmBh
Bahnhofstrasse, 10; Zug
6300; Switzerland

AIRGAS USA, LLC
780 STATE CIR
ANN ARBOR MI 48108-1648

AMAZON
PO Box 035184
Seattle, WA 98124-5184

Airgas USA, LLC
6055 Rockside Woods Blvd
Independence, OH 44131-2301

Alhambra
PO BOX 660579
DALLAS, TX 75266-0579

AmTrust North America, Inc.
c/o Maurice Wutscher LLP
23611 Chagrin Blvd. Suite 207
Beachwood, OH 44122-5540

AmTrust North America, Inc. on behalf of
c/o Maurice Wutscher LLP
23611 Chagrin Blvd. Suite 207
Beachwood, OH 44122-5540
          Duplicate

Amtrust Insurance
Technology Insurance Company, Inc.
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114-2601

Ana Barajas
c/o Paul Dolberg
Ratto Law Firm
600 16th Street
Oakland, CA 94612-1206

Antaya Technologies Corp.
333 Strawberry Field Rd.
Attn: Lital Herskovits
Warwick, RI 02886-2476

Arizona Department of Revenue
P.O. Box 29079
Phoenix, AZ 85038-9079

Atlas Copco Compressors LLC
300 Technology Center Way STE 550
Rock Hill, SC 29730-0175

Atlas Copco Compressors LLC
48430 Milmont Dr
FREMONT, CA 94538-7326

Automatic Data processing (ADP)
1 ADP Blvd
Roseland, NJ 07068-1786

Avenue Logistics, LLC
P.O. Box 7410491
Chicago, IL 60674-0491

BRASILCintas Corporation
P.O. Box 631025
CINCINNATI, OH 45263-1025

BRASILInternal Revenue Service
38275 West Twelve Mile Road
Suite 200
Farmington Hills, MI 48331-3049

Berliner Cohen
Ten Almaden Blvd., 11th Floor
San Jose, CA 95113-2270

Richard James Bernard
90 Park Avenue
New York, NY 10016-1301

Biesse America Inc.
PO Box 19849
Charlotte, NC 28219-0849

Big Joe Handling Systems
25932 Eden Landing Rd
Hayward, CA 94545-3816

Brandon Nicholson
c/o Mehrdad Bokhour, Esq.
Bokhour Law Group
1901 Avenue of the Stars, Ste. 450
Los Angeles, CA 90067-6006

Buhler Group
Buhler Alzenau GmbH
Siemensstrrasse 88
63755 Alzenau
Germany

CANADAAGP AMERICA S.A.
MMG Tower 23rd Floor
Av. Paseo del Mar, Costa del Este
Panama, Rep of Panama

CARPELA INDUSTRIA E COMERCIO LTDA
Rua Senador Vergueiro
282 – Centro
So Caetano do Sul  SP
Brasil

California Pest Control
PO BOX 692636
Stockton, CA 95269-2636

Canon Financial Service
14904 Collections Center Drive
Chicago, IL 60693-0149

Canton Township
41600 Haggerty Circle
Building F
Canton, MI 48188-2227

Capital Waste Service
1450 Bluff Rd
Columbia, SC 29201-4810

Carolina Handling LLC
PO Box 890352
Charlotte, NC 28289-0352

Cellco Partnership d/b/a Verizon Wireless
William M Vermette
22001 Loudoun County PKWY
Ashburn, VA 20147-6122

Chrome River
320 Cumberland Avenue
Portland, ME 04101-4928

City Of Tracy Revenue department
333 Civic Center Plaza
Tracy, CA 95376-4062

Comcast Business services
PO BOX 21638
EAGAN, MN 55121-0638

Comerica Bank
7964 188 North Old Woodward
Birmingham, MI 48009

Comerica Bank
PO Box 75000
Detroit, MI 48275-8084

Culligan
46902 LIBERTY DRIVE
WIXOM, MI 48393-3600

DESIGNETICS, INC.
1624 South Eber Road
Holland, Ohio 43528-9776

DTE
One Energy Plaza
Detroit, MI 48226-1221

Delta Disposal Services
PO Box 660579
Dallas, TX  75266-0579

Dodson Pest Control
4110 The Plaza
Charlotte, NC 28205-1355

Tamar Dolcourt
500 Woodward Ave.
Suite 2700
Detroit, MI 48226-3489

Dominion Energy
PO Box 25973
Richmond, VA 23260-5973

Europartners de Mexico SA
Av. Revolucin 649
Colonia Jardin Espaol Monterrey
Nuevo Leon Mexico, C.P. 64820

FRANCHISE TAX BOARD California
PO BOX 942857
Sacramento CA 94257-0001

Fedex Freight
P.O. Box 371461
Pittsburgh PA 15250-7461

GERMANYCabalo Logistics
Calzada del Valle 400, Edificio III, Col
Del Valle, San Pedro Garza Garcia
Nuevo Len Mexico, C.P. 66220

Genesis Engineering Services
1000 Whipple Rd.
Union City, CA 94587-2023

GlasWeld
20578 Empire Ave
Bend Oregon 97701-5715

Hartford Fire Insurance Company
P O Box 660916
Dallas, TX 75266-0916

Hartford Fire Insurance Company
Post Office Box 850045
Minneapolis, MN 55485-0045

Helm Bank
999 Brickell Avenue
Miami, FL 33131-3217

Hillside
29409 Haggerty Rd
Suite 200
Novi, MI 48377-5504

Alan C. Hochheiser
23611 Chagrin Blvd.
Suite 207
Beachwood, OH 44122-5540

INDUSTRIA E COMERCIO DE SUPRIMENTOS
Rua Senador Vergueiro
282 - Centro
So Caetano do Sul  SP
Brasil

Internal Revenue Service
Centralized Insolvency Operation
PO Box 7346
Philadelphia, PA 19101-7346
                    Duplicate

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346


Jan-Pro Cleaning Systems of Columbia
1432 Sunset Blvd.
West Columbia, SC 29169-5916

Jesus Valdez
c/o Roman Otkupman, Esq.
Otkupman Law Firm
5743 Corsa Avenue, Ste. 123
Westlake Village, CA 91362-7310

Jesus Valdez Medina
c/o Jessica L. Campbell, Esq.
Aegis Law
9811 Irvine Center Dr. #100
Irvine, CA 92618-4375


K. Jin Lim
176 S. Harvey
Plymouth, MI 48170-1616

MEXICOOhio Department of Taxation
PO Box 2679.
Columbus, Ohio 43270-2679

Marcell West
c/o Lawrence Organ and Emily Kohlheim
California Civil Rights Law Group
870 Market Street, Ste. 544
San Francisco, CA 94102-3025


Michigan Department of Treasury
P.O. Box 30442
Lansing, MI 48909-7942

Michigan Revenue Department
P.O. Box 30442
Lansing, MI 48909-7942

Sandra L. O'Connor
Sandra O'Connor Law, PLLC
100 N. Pond Drive, Suite A
Walled Lake, MI 48390-3079


Plante Moran
Attn: Christine Sielicki
2601 Cambridge Court, Suite 300
Auburn Hills, MI 48326-2576

Prologis LLC
615 International Pkwy
Tracy, CA 95377-8921

Prologis LLC
Attn: General Counsel
1800 Wazee Street, Ste. 500
Denver, CO 80202-2526


Raymond Carolina Handling, LLC
PO Box 890352
Charlotte, NC 28289-0352

Real Clean Commercial, LLC
21 E. South St
Tracy, CA 95376-4607

RecruitGigs, LLC
P.O. Box 29647
Dallas, TX 75229-0647


Republic Service
3168 Charleston Hwy.
West Columbia, SC 29172-2712

Ronald Patterson
c/o Lawrence Organ and Emily Kohlheim
California Civil Rights Law Group
870 Market Street, Ste. 544
San Francisco, CA 94102-3025

SC Department of Revenue
300A Outlet Pointe Blvd
Columbia, SC 29210-5666


Shanghai Gosun Automation Technology Co.
No. 4 Building, No 18
Jucheng Road
Jiading District
Shanghai, China

Soliver
Nederzwijnaarde 2
Building 56
9052 Gent, Belgium

South Carolina Department of Revenue
PO Box 125
Columbia, SC 29202-0125


Staples
500 Staples Dr
Framingham, MA 01702-4474

(p)STAPLES BUSINESS ADVANTAGE THOMAS RIGGLEMA
7 TECHNOLOGY CIRCLE
COLUMBIA SC 29203-9591

Sunbelt Rentals, Inc.
PO BOX 409211
Atlanta, GA 30384-9211


Systemp
3909 Industrial Drive .
Rochester Hills, MI 48309-3118

TCLP
Merit Laboratories, Inc.
2680 East Lansing Drive
East Lansing, MI 48823-6909

Tem Asure Inc
12550 Universal
Taylor, MI 48180-6838

Tesla  
901 Page Avenue  
Fremont, CA 94538-7341

Tesla  
Attn: General Counsel/Legal  
1 Tesla Road  
Austin, TX 78725-4400

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS  
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION  
PO BOX 13528  
AUSTIN TX 78711-3528

Toshiba / Power Business Technology  
1020 Winding Creek Rd., Suite 150  
Roseville, CA 95678-7043

Total Water Treatment Systems, Inc.  
46902 Liberty Drive  
Wixom, MI 48393-3600

Travelers Business Insurance  
One Tower Square  
Hartford, CT 06183-0002

U.S. Attorney  
Attn: Civil Division  
Eastern District of Michigan  
211 W. Fort St., Ste. 2001  
Detroit, MI 48226-3220

UFP  
ATTN: Brian Schumaker  
2801 East Beltline NE  
Grand Rapids, MI 49525-9680

ULINE, INC.  
PO Box 88741  
Chicago IL 60680-1741

Ultimation Industries LLC  
15935 Sturgeon Street  
ROSEVILLE, MI 48066-1818

Unite States Treasury  
38275 West Twelve Mile Road  
Suite 200  
Farmington Hills, MI 48331-3049

Vail Haggerty LLC  
12955 23 Mile Road  
Shelby Twp., MI 48315-2707

This entity is being served with a complete copy of the Motion.

Vail Village, LLC  
12955 23 Mile Road  
Shelby Twp., MI 48315-2707

This entity is being served with a complete copy of the Motion.

Volvo Group Trucks Purchasing  
Attn: Sean Markham  
7900 National Service Rd.  
Greensboro, NC 27409-9416

W.W. GRAINGER INC  
2501 Stagecoach RD.  
Stockton, CA 95215-7909

Waste Management  
PO BOX 3020  
MONROE, WI 53566-8320

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified  
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service  
STOP 8420G  
PO Box 145595  
Cincinatti, OH 45250-9734

Staples, Inc.  
PO Box 102419  
Columbia, SC 29224

Texas Department of Revenue  
P.O. Box 149348  
Austin, TX 78714-9348

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Helm Bank  
999 Brickell Avenue  
Miami, FL 33131-3217

(u)Nippon Express de Mxico S.A. DE C.V  
Insurgentes Sur # 1271  
Piso 12 Col. Extremadura Insurgentes Alc  
Benito Juarez, C.P. 03740,CDMX

(u)Prologis-Exchange IPC 10 LLC

(d)Real Clean Commercial, LLC
21 E. South St.
Tracy, CA 95376-4607

(u)Transtech Glass Investment Limited
2nd Floor, Gaspe House
66-72 Esplanade
St. Helier
JE1 1GH Jersey

(d)Ultimation Industries, LLC
15935 Sturgeon Street
Roseville, MI 48066-1818

End of Label Matrix
Mailable recipients   105
Bypassed recipients     6
Total                 111

# Exhibit A

## Transfer and Purchase Agreement

(see attached)

## TRANSFER AND PURCHASE AGREEMENT

**THIS TRANSFER AND PURCHASE AGREEMENT** (the "**Agreement**") is made as of January 27, 2025, by and between K. Jin Lim, solely in her capacity as the duly appointed Chapter 7 trustee (the "**Trustee**") of the bankruptcy estate of AGP e-Glass Co. ("**Seller**"), and NxLite Corporation, a Delaware corporation (f/k/a 3E Nano Corporation) (or one or more of its designees identified prior to the Closing, collectively, "**Buyer**"), and together with Seller, the "**Parties**" and each, a "**Party**").

**WHEREAS**, AGP e-Glass Co., a Michigan corporation ("**Debtor**") is a glazing manufacturer of certain parts, operating out of several locations, including the premises located at 41600 Haggerty Circle, Canton, Michigan (the "**Premises**"), which Debtor leases from Vail Village, LLC (the "**Landlord**") pursuant to that certain Master Lease Agreement, dated as of October 21, 2021 (as may be amended from time to time, the "**Lease**");

**WHEREAS**, Debtor and Buyer are party to that certain Shared Space Agreement, dated April 15, 2024 (as may be amended from time to time, the "**Shared Space Agreemen**t"), pursuant to which Buyer and Seller share a portion of the Premises and certain of Debtor's equipment and employees of Debtor;

**WHEREAS**, Debtor and Buyer are party to that certain Assigned AGP Personnel Agreement, dated May 20, 2023 (as may be amended from time to time, the "**Shared Personnel Agreement**"), whereby Debtor assigned two of its employees to Buyer;

**WHEREAS**, under the Shared Space Agreement and the Shared Personnel Agreement, among other things, Debtor provided Buyer with services of two of its foreign national employees: Paulo De Moura and Adair Guzman (together, the "**Specified Employees**"), who worked at the Premises and who possess specialized talent and expertise necessary to operate certain highly customized equipment that Buyer now seeks to purchase;

**WHEREAS**, on November 14, 2024 (the "**Petition Date**"), a voluntary petition was filed under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") by Debtor, which proceeding is currently pending in the United States Bankruptcy Court for the Eastern District of Michigan – Southern Division (the "**Bankruptcy Court**") styled *In re AGP E-Glass Co.*, Case No. 24-50838-MLO (the "**Bankruptcy Case**"), with the Honorable Maria L. Oxholm presiding, and the Trustee was appointed as Chapter 7 trustee for Debtor's bankruptcy estate (the "**Estate**") in the Bankruptcy Case;

**WHEREAS**, pursuant to Bankruptcy Code section 541, all of Debtor's assets are now property of the Estate and subject to administration by Seller;

**WHEREAS**, Buyer desires to purchase, acquire and assume from Seller, and Seller desires to transfer, sell, assign, convey and deliver to Buyer, the Assets (as such term is defined herein), except the Excluded Assets (as such term is defined herein), and assume the Assumed Liabilities, free and clear of all Interests (as such term is defined herein) in accordance with Bankruptcy Code sections 363 and 365, and otherwise on the terms and conditions set forth herein (the "**Transactions**");

**WHEREAS**, for clarity, Buyer shall, in connection with the employment of the Specified Employees, assume all requisite immigration obligations associated with transferring the Specified Employees' Visas to Buyer, which shall be Assumed Liabilities; and

**WHEREAS**, simultaneously with the Closing of the Transactions, Buyer and Seller desire to settle certain claims that they may have between one another under the Shared Space Agreement and the Shared Personnel Agreement, and pursuant to this Agreement the Parties shall agree to grant such releases to each other, which shall be documented in the Sale Order.

**IN CONSIDERATION OF** the mutual covenants contained in this Agreement, and for good and valuable consideration, the Parties, intending to be legally bound, agree as follows:

1. **Purchase and Sale of Assets**.

    1.1 **Purchased Assets; the Assumed Contract**. Subject to the terms and conditions set forth herein, on the Closing Date (as such term is defined herein), Seller shall transfer, sell, assign, convey and deliver to Buyer, and Buyer shall purchase, acquire and assume from Seller, free and clear of all liens (including, without limitation, mechanics', materialmens', and other consensual and non-consensual liens and statutory liens), claims (including any "claim" as defined in Bankruptcy Code section 101(5)), encumbrances, interests , obligations, rights, pledges, mortgages, deeds of trust, rights of first offer and/or first refusal, buy/sell agreements, options, charges, community and other marital property interests, hypothecations, Taxes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or possession, security interests, liabilities, debt obligations, penalties, charges, judgments, guaranties, and indemnity obligations, Orders, conditional sale or other title retention agreements and other similar impositions, imperfections or defects of title or restrictions on transfer or use, equitable interests and all other restrictions and covenants with respect to, and conditions governing, the voting, transfer, receipt of income and/or exercise of any other attribute of ownership, in each case, of whatever kind, nature, or description in, against, or with respect to any of the Assets, having arisen, existed, or accrued prior to the Closing Date, whether direct or indirect, absolute or contingent, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, material or non-material, disputed or undisputed, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise, including claims or liabilities arising under doctrines of successor liability, or de facto merger, and including the IRS Lien (as defined below) (other than the Assumed Liabilities, collectively, "**Interests**"), in accordance with Bankruptcy Code sections 105, 363 and 365, as applicable, all properties, rights, interests and other assets held by Debtor and its Estate as of the Closing, whether tangible or intangible, personal, or mixed, as follows (collectively referred to herein as the "**Assets**"):

        (a)    all of the Estate's equipment and personal property (including information technology programming) that are located at the Premises (which, for clarity, were also located at the Premises as of the Petition Date), and all of the Estate's claims, rights, interests and causes of action related t hereto;

1614469151.16

24-50838-mlo   Doc 31   Filed 01/27/25   Entered 01/27/25 17:02:16   Page 59 of 77

(b)     all of the Estate's claims, rights, interests and causes of action related to equipment that may be in transit to Seller or located at a third party's facility or an affiliate of Debtor's facility, as listed on **Schedule A-1** attached hereto;

(c)     all rights of the Estate to pre-payments, installment payments, letters of credit, or deposits made by Debtor for Assets or services related to the Assets or services related to the Premises;

(d)     the books, records and/or other documents (whether in electronic, hard copy or any other form, and wherever located) related to the Assets at the Premises, which the Parties agree are not in the possession of Seller and that Seller shall have no obligation to obtain any such books, records and/or other documents for Buyer;

(e)     the security deposit under the Lease; and

(f)     the Contract to which Seller is a party listed on **Schedule A-2** (the "**Assumed Contract**").

Notwithstanding the foregoing, Seller shall transfer and Buyer shall purchase the Biesse Grinding CNC Machine listed on **Schedule A-1** (the "**Grinding CNC Machine**") subject to any properly perfected security interests, if any, as shall be specified in the Sale Order. For the avoidance of doubt, the Assets shall in no event include the Excluded Assets.

    1.2    **Excluded Assets**.  The Assets shall not include the assets set forth in **Schedule B** attached hereto (collectively referred to herein as the "**Excluded Assets**").

    1.3    **Assumption of Certain Liabilities**.  On the terms and subject to the conditions set forth herein and in the Sale Order, effective as of the Closing, Buyer shall irrevocably assume from Seller (and from and after the Closing pay, perform, discharge, or otherwise satisfy in accordance with their respective terms), and Seller shall irrevocably transfer, assign, convey, and deliver to Buyer, only the following Liabilities, without duplication and only to the extent not paid prior to the Closing (collectively, the "**Assumed Liabilities**"):

(a)     all requisite immigration obligations associated with transferring each of the Specified Employee's Visas to Buyer in connection with Buyer's employment of the Specified Employees;

(b)     all obligations of Seller under the Assumed Contract that become due from and after the Closing; and

(c)     all cure costs required to be paid pursuant to Bankruptcy Code section 365 in connection with the assumption and assignment of the Assumed Contract, and specifically with respect to the Lease, pursuant to the structure set forth in **Sections 3.2** and **3.3** below.

3

1614469151.16

2.     **Excluded Liabilities**.  Notwithstanding any other provision in this Agreement to the contrary, Buyer shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any Liabilities of (including, but not limited to, Taxes or accounts payable), or Action against, Debtor or its affiliates, of any kind or nature whatsoever, whether absolute, accrued, contingent or otherwise, liquidated or unliquidated, due or to become due, known or unknown, currently existing or hereafter arising, matured or unmatured, direct or indirect, and however arising, whether existing on the Closing Date or arising thereafter as a result of any act, omission, or circumstances taking place prior to the Closing, other than the Assumed Liabilities (all such Liabilities that are not Assumed Liabilities being referred to collectively herein as the "**Excluded Liabilities**").  For the avoidance of doubt, Excluded Liabilities include all Liabilities related to that certain Notice of Federal Tax Lien filed by the Internal Revenue Service ("**IRS**") with the Michigan Department of State under the Uniform Commercial Code on June 5, 2024, filing number 20240605000868-9 (the "**IRS Lien**") is an Excluded Liability.  To the extent that the IRS Lien has not been previously satisfied by Seller, the Sale Order shall provide that the IRS Lien shall attach to the net cash proceeds of the Transactions received by the Estate, and that in no event shall Buyer or any of its affiliates be liable for the IRS Lien.

3.     **Consideration**.

3.1     **Purchase Price; Transaction Value**.  The aggregate consideration for the Assets shall be equal to: (a) a total of **Five Hundred and Twenty-Five Thousand ($525,000.00)**, in cash, which shall be comprised of: (i) an amount in cash equal to **Four Hundred and Twenty-Five Thousand Dollars ($425,000.00)** ("**Cash Consideration**") *plus* (ii) the **One-Hundred Thousand Dollar ($100,000.00)** deposit made by Buyer to Seller under the Shared Space Agreement (collectively, the "**Deposit Consideration**") (collectively, the "**Purchase Price**"), *plus* (b) Buyer's assumption of the Assumed Liabilities, as set forth below.

3.2     **Payment of Cash Consideration and the Deposit.** On the Closing Date:

(a)     Buyer shall deliver, or cause to be delivered, to Seller the Cash Consideration by certified check made payable to "K. Jin Lim, Trustee of AGP" and delivered to Seller's counsel, Sandra L. O'Connor, at Sandra O'Connor Law, PLLC, 100 N. Pond Drive, Suite A, Walled Lake, Michigan 48390; and

(b)     Buyer shall release its interest in the Deposit Consideration.

3.3     **Assumed Liabilities for Cure of the Lease.** Buyer and Seller hereby agree that Seller shall assign to Buyer, and Buyer shall assume, the Assumed Liabilities related to cure payments for the Lease, which cure shall be paid as follows:

(a)     **Post-Petition Cure Amounts**:

(i)     At or prior to the Closing, the Parties agree that in settlement of all amounts Buyer may owe to Seller under the Shared Space Agreement, Buyer shall pay to Seller a total sum of $112,000.00, which equals two (2) monthly prorated payments of $56,000.00, for the months of December 2024 and January

4

2025. The funds set forth in this **Section 3.3(a)(i)** shall be paid to Seller via certified check, as set forth in **Section 3.2(a)**.

(ii) Promptly upon receipt of the funds received by Seller in **Section 3.3(a)(i)** above and after the certified check for such funds has cleared, Seller shall satisfy the outstanding amounts of post-petition rent due and owing under the Lease from December 1, 2024, through January 31, 2025, to the Landlord, by the Estate.

(b) **Pre-Petition Cure Amounts**: Buyer shall satisfy up to $45,221.67 of pre-petition rent that is owed by the Estate to the Landlord under the Lease.

3.4 **Sales Tax Payable by Seller; Transfer Taxes**. Buyer shall pay the sales tax due, if any, with respect to the Transactions contemplated hereby. Any U.S. federal, state, local, and non-U.S., sales Tax, consumption sales, use, excise, value added, registration, real property, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use or other Taxes and recording charges (including all related interest, penalties, and additions to any of the foregoing) payable by reason of the sale of the Assets or the assumption of the Assumed Liabilities under this Agreement or the Transactions (the "**Transfer Taxes**") shall be borne and timely paid by Buyer.

4. **Title**. Seller shall convey title to the Assets to Buyer by means of a Bill of Sale (the "**Bill of Sale**") and one or more Assumption and Assignment Agreement(s) (an "**Assumption and Assignment Agreement**", and with the Bill of Sale, the "**Transaction Documents**") in substantially the form as the Parties shall reasonably agree to prior to the Closing, subject to the Sale Order and this Agreement, and as approved by the Bankruptcy Court, free and clear of all Interests pursuant to Bankruptcy Code sections 363 and 365 (except as otherwise noted herein with respect to the Grinding CNC Machine).

5. **"As Is, Where Is"; Licenses and Permits.**

5.1 Buyer acknowledges that, except as otherwise expressly set forth in this Agreement or in any document, instrument or agreement executed by Seller in connection with this Agreement or with the Transactions contemplated hereby, and to the extent otherwise permitted by law, Seller is selling the Assets that consist of personal property on an "AS IS, WHERE IS" basis and Seller makes no representations or warranties of any kind or nature with respect to the sale of the Assets, including any implied warranties of merchantability or fitness for a particular purpose.

5.2 Except as otherwise provided herein (including with respect to the transfer by Seller to Buyer of the Visas, consents to assignment of the Assumed Contract, and transfer of permits or licenses, as applicable), Buyer assumes responsibility for obtaining all required licenses, permits, copyrights, patents, trademarks, permits and/or other agreements and/or rights as may be required so that Buyer may lawfully use, sell, distribute or dispose of any of the Assets; *provided*, *however*, up to and following the Closing, Seller shall act in good faith and with best efforts to assist Buyer with the transfer of all such applicable licenses, permits, copyrights, patents,

1614469151.16

trademarks, permits and/or other agreements and/or rights as may be required so that Buyer may lawfully use the Assets prior to and after Closing, or so that Buyer may sell, distribute or dispose of any of the Assets after the Closing..

6. **Seller's Representations and Warranties**. Seller makes the following representations and warranties, which shall survive execution of this Agreement, and which shall survive the Closing:

6.1 **Authority**. Seller is the Trustee in the Bankruptcy Case. Subject to entry of the Sale Order, Seller has the authority to enter into this Agreement and to consummate the Transactions contemplated thereby.

6.2 **Removal of Assets**. No Assets located at the Premises have been removed since the Petition Date to the best of Seller's knowledge.

7. **Buyer's Representations and Warranties**. Buyer makes the following representations and warranties, which shall survive execution of this Agreement and which shall survive the Closing:

7.1 **Authority**. Buyer has the power and authority to enter into this Agreement and consummate the Transactions contemplated thereby.

7.2 **Investigations**. Buyer acknowledges that Seller, as recently appointed the Trustee in the Bankruptcy Case, has limited information and documents concerning the Assets and, other than the express representations made by Seller pursuant to this Agreement, Buyer is not relying on any representations, warranties or inducements of Seller (or any agent of Seller) with respect to the Assets, the condition of title to the Assets or any other matter pertaining to the Assets, or the Transactions contemplated herein or otherwise.

8. **Covenants of Buyer and Seller**.

8.1 **Best Efforts**. Upon the terms and subject to the conditions set forth in this Agreement, each Party agrees to use reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Party in doing, all things necessary, proper or advisable to consummate and make effective the Transactions contemplated by this Agreement, including the transfer of the Visas and transfer of any license or permit, as set forth in **Section 5.2**.

8.2 **Satisfaction of Conditions**. Seller will use her reasonable best efforts to cause or obtain the satisfaction of the conditions applicable to Seller specified in **Section 10** below. Buyer will use its reasonable best efforts to cause or obtain the satisfaction of the conditions applicable to Buyer specified in **Section 9** below.

8.3 **Costs and Expenses**. All costs and expenses incurred in connection with this Agreement and the Transactions contemplated hereby, including the fees and disbursements of counsel, financial advisors and accountants, shall be paid by the Party incurring such costs and expenses.

6

8.4 **Sale Motion and Sale Order**.  Seller shall file a Sale Motion seeking approval entry of the Sale Order, promptly after the execution of this Agreement.  Seller shall exercise reasonable efforts to obtain the Sale Order, in a form acceptable to Buyer in its sole discretion, approving this Agreement and the consummation of the Transactions contemplated hereunder, free and clear of all Interests (except as otherwise noted herein with respect to the Grinding CNC Machine).

8.5 **Appeal**.  In the event an appeal is taken or a stay pending appeal is requested from the Sale Order, Seller shall immediately notify Buyer of such appeal or stay request and shall provide to Buyer promptly a copy of the related notice of appeal or order of stay.  Seller shall also provide Buyer with written notice of any motion or application filed in connection with any appeal from either of such orders.  In the event of an appeal of the Sale Order, Seller shall be primarily responsible for drafting pleadings and attending hearings as necessary to defend against the appeal.  For this **Section 8.5** only, the notice requirements set forth under **Section 15.9** shall not apply, and the Parties agree that notice shall instead be effectuated by e-mail from Seller's counsel to Buyer's counsel with confirmation of receipt by Buyer's counsel.

8.6 **Governmental Approvals**. (i) All approvals or consents of Governmental Bodies required prior to Closing that are material to the sale of the Assets or to Buyer's acquisition of the Assets shall have been obtained (except with respect to the Visas), and (ii) there shall be no law or Order that restrains or prevents the Transactions contemplated hereunder.

8.7 **[RESERVED]**.

8.8 **Cooperation**. Without limiting any other covenant set forth herein in any respect, the Parties shall use commercially reasonable efforts to provide draft copies of all motions, applications, and other documents that such Party intends to file with the Bankruptcy Court in the Bankruptcy Case to counsel for other Party at least three (3) Business Days prior to the date when such Party intends to file such document, and shall consult in good faith with such counsel regarding the form and substance of any such proposed filing.

8.9 **Bankruptcy Court Approval; Sale Order**.  The sale to Buyer by Seller and the other Transactions contemplated by this Agreement are expressly subject to approval of the Bankruptcy Court.  Promptly after the execution of this Agreement, Seller shall file with the Bankruptcy Court a motion (the "**Sale Motion**") for entry of an order in form and substance reasonably acceptable to Buyer in its sole discretion (the "**Sale Order**"), providing that, among other things: (i) the sale of the Assets and assignment of the Assumed Contract to Buyer in accordance with this Agreement shall be pursuant to Bankruptcy Code sections 363(b), 363(f) and 365, free and clear of all Interests (except as otherwise noted herein with respect to the Grinding CNC Machine); (ii) the sale of the Assets and assignment of the Assumed Contract shall close once the Sale Order is final with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued preventing this Agreement from becoming enforceable); and (iii) the Bankruptcy Court shall retain jurisdiction with respect to any matters relating to the Sale Order or the Transactions contemplated by this Agreement.  Seller shall consult with Buyer and its representatives concerning the Sale Order, and any other Orders of the Bankruptcy Court relating to the Transactions contemplated by this Agreement, and the bankruptcy proceedings in connection therewith, and use commercially reasonable efforts to provide Buyer with copies of

7

applications, pleadings, notices, proposed Orders and other documents relating to such proceedings as soon as reasonably practicable prior to filing. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order and, if applicable, furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement and demonstrating that Buyer is a "good faith" purchaser under Bankruptcy Code section 363(m); *provided, however*, in no event shall Buyer or Seller be required to agree to any amendment of this Agreement.

8.10 **Milestones**. Seller shall satisfy each of the following requirements by the deadlines set forth herein, each of which may be extended or waived with Buyer's written consent in its sole discretion:

(a) Within three (3) Business Days of execution of this Agreement, Seller shall provide a draft copy of the Sale Motion to Buyer's counsel under **Section 8.8.**

(b) No later than three (3) Business Days after receiving final approval of the Sale Motion from Buyer's counsel, Seller shall have filed the Sale Motion to approve this Agreement the Transactions contemplated herein, in a form and substance of which shall be acceptable to Buyer;

(c) If no objections are filed to the Sale Motion (or any such objections are withdrawn or otherwise resolved), Seller shall file a certificate of no response under the Bankruptcy Court's Local Rules on the first day that the certificate of no response can be filed under Local Rule 9014-1(d) and shall simultaneously submit the proposed Sale Order for entry by the Bankruptcy Court, the form and substance of which shall be acceptable to Buyer in its sole discretion, which approves the Purchase Agreement and the Transactions contemplated thereunder; and

(d) No later than the Outside Date, the Closing shall have occurred.

8.11 **Seller Covenant to Not Contravene Sale Order or Closing**. From and after the date hereof, Seller shall not take any action that is intended to result in, or fail to take any action the intent of which failure to act would result in, the reversal, voiding, modification or staying of the Sale Order (or, if applicable, the bidding procedures order). Seller covenants and agrees that, after the entry of the Sale Order, the terms of any motion(s) to dismiss the Bankruptcy Case, or other case closing procedural relief requested that Seller submits to the Bankruptcy Court, or any other court for confirmation or sanction, shall not be intended to (or reasonably likely to) supersede, abrogate, nullify or restrict the terms of this Agreement in any material respect, or prevent the consummation or performance of the Transactions contemplated hereunder.

8.12 **Cure Costs**. Seller shall sell, transfer and assign, the Assumed Contract to Buyer, and Buyer shall purchase and assume the Assumed Contract from Seller, as of the Closing Date pursuant to Bankruptcy Code sections 363 and 365 and the Sale Order. In connection the

1614469151.16

assignment and assumption of the Assumed Contract, Buyer and Seller shall satisfy the cure costs as set forth in **Sections 3.2** and **3.3** herein.

8.13    **Tax Matters**.  Seller shall serve the Sale Motion on the following relevant taxing and regulatory authorities: Canton Township, the Internal Revenue Department, the Michigan Department of Treasury and the Michigan Revenue Department.

9.    **Conditions Precedent to Closing for Benefit of Seller**.  As independent conditions precedent for the benefit of Seller, Seller's obligations hereunder, including the obligation to transfer the Assets to Buyer, are contingent upon satisfaction of each of the following conditions unless otherwise waived by Seller in writing on or before the Closing:

9.1    **Receipt by Seller of Buyer's Deliveries**.  Seller shall have received at the Closing the deliveries required by **Section 11** of this Agreement.

9.2    **Compliance with Covenants**.  Buyer shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Buyer on or prior to the Closing.

9.3    **Sale Order and Findings**.  This Agreement and the Transactions contemplated herein shall have been approved by the Bankruptcy Court and the Bankruptcy Court shall have entered the Sale Order in the Bankruptcy Case so approving, concurrently with findings of fact and conclusions of law (in form and substance reasonably acceptable to Seller) (the "**Findings**"), and such Sale Order shall be final with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued either preventing this Agreement from becoming enforceable or the Transactions closing).

9.4    **No Violation of Orders**.  No preliminary or permanent injunction or other order that would prevent the consummation of the Transactions contemplated by this Agreement shall be in effect.

10.    **Conditions Precedent to Buyer's Closing**.  As independent conditions precedent for the benefit of Buyer, Buyer's obligations hereunder, including the obligation to pay the Purchase Price, are contingent upon satisfaction of each of the following conditions unless otherwise waived by Buyer in writing on or before the Closing:

10.1    **Receipt by Buyer of Seller's Deliveries**.  Buyer shall have received at the Closing the deliveries required under **Section 11** of this Agreement.

10.2    **Compliance with Covenants**.  Seller shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Seller on or prior to the Closing.

10.3    **Sale Order and Findings**.  This Agreement and the Transactions contemplated herein shall have been approved by the Bankruptcy Court and the Bankruptcy Court shall have entered the Sale Order in the Bankruptcy Case so approving, concurrently with the Findings (in form and substance reasonably acceptable to Seller) and such Sale Order shall be final

1614469151.16

with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued either preventing this Agreement from becoming enforceable or the Transactions closing).

10.4 **No Violation of Orders**. No preliminary or permanent injunction or other order that would prevent the consummation of the Transactions contemplated by this Agreement shall be in effect.

11. **Deliveries at Closing**. The Parties shall make the following deliveries at Closing:

11.1 **Purchase Price**. Buyer shall deliver to Seller the Cash Consideration as set forth in **Section 3.2**.

11.2 **Buyer Payment of Postpetition Cure Costs for the Lease**. Buyer shall pay Seller the amounts set forth in **Section 3.3(a)(i)**.

11.3 **Seller Payment of Postpetition Cure Costs for the Lease**. Promptly upon receipt of the Cash Consideration and after the certified check has cleared, Seller shall pay the Landlord the amounts set forth in **Section 3.3(a)(ii)**.

11.4 **Transaction Documents**. Seller shall duly execute and deliver to Buyer the Bill of Sale and the Assumption and Assignment Agreement(s).

11.5 **Other Deliverables**. The Parties agree to the delivery of all other instruments of transfer, assignment or conveyance duly executed by Seller as shall be reasonably requested or reasonably necessary to transfer the Assets to Buyer in accordance with this Agreement.

12. **Closing**. The closing of the Transactions (the "**Closing**") shall occur by telephone conference and electronic exchange of the Transaction Documents (executed electronic versions of which shall have been exchanged prior to the Closing and held in escrow by counsel to each Party) on the date (a) that is the first Business Day following full satisfaction or due waiver (by the Party entitled to the benefit of such condition) of the closing conditions set forth in **Sections 9** through **11** (the "**Closing Date**"), and (b) on which the certified check for the Purchase Price is delivered by Buyer's courier to counsel to Seller at the address designated by counsel to Seller and e-mailed to counsel to Buyer; provided, that in no event shall the Closing Date occur later than the Outside Date, and provided, further, that in the event that the Closing has failed to occur by the Outside Date, this Agreement may be terminated pursuant to **Section 13**. At the Closing, the executed Transaction Documents shall be released from escrow upon proof of receipt of the certified check for the Purchase Price. Delivery may be evidenced by Seller's counsel's signature received by the courier and transmitted to counsel for Buyer (which transaction may occur via video conference with counsel to both Parties). The Parties may mutually agree in writing to effect the Closing on an earlier or a later date or through a different procedure without further order of the Bankruptcy Court. The existence of the Outside Date for the Closing shall not relieve the Parties of their respective obligations under this Agreement to use commercially reasonable efforts to perform and satisfy all conditions to their respective obligations to consummate the Transactions.

1614469151.16

13. **Termination**.

(a) This Agreement may be terminated by the mutual written consent of the Parties.

(b) Either Seller or Buyer may terminate this Agreement by written notice to the other if the Closing shall not have occurred by the Outside Date due to no breach by the terminating Party.

(c) Buyer may terminate this Agreement by written notice to Seller, if any of the conditions in **Section 10** are not satisfied by the Outside Date, or if Seller breaches any of its obligations under this Agreement, including **Section 8.10**.

(d) Seller may terminate this Agreement by written notice to Buyer if any of the conditions in **Section 9** are not satisfied by the Outside Date, or if Buyer breaches any of its obligations under this Agreement.

(e) No termination under this **Section 13** shall release either Party from or act as a waiver of any claim against the other Party, at law or in equity as a result of such termination or as a result of any breach or default under this Agreement.

(f) This Agreement may be terminated as provided herein without further order of the Bankruptcy Court.

14. **No Brokers**. Buyer and Seller each represent and warrant to the other that no person or entity has been engaged by it as a broker, agent or finder, licensed or otherwise, in connection with the Transaction contemplated by this Agreement. If any claim is made for a commission or finder's fee in connection with the Transactions contemplated by this Agreement, then the Party upon whose actual statement, representation or agreement that claim arises shall indemnify, defend, protect and hold harmless the other Party from and against all liability, damage and cost (including actual attorneys' fees) the other Party incurs as a result thereof. For avoidance of doubt, this **Section 14** does not apply to any fee or expense payable to Seller as the Trustee in the Bankruptcy Case.

15. **Miscellaneous**.

15.1 **Entire Agreement**. This Agreement and the written agreements referred to herein and executed in connection herewith constitute the entire understanding among the parties with respect to the subject matter hereof, and supersede all negotiations, prior discussions or other agreements, oral or written.

15.2 **Governing Law; Venue**. This Agreement has been negotiated and entered into in the State of Michigan, and shall be governed by, and construed in accordance with, the laws of State of Michigan in effect at the time of its execution, without reference or regard to the principles of conflict of laws. Any action arising out of this Agreement must be brought and maintained in the Bankruptcy Court, and the Parties hereto consent to the jurisdiction of the Bankruptcy Court; *provided*, that after the Bankruptcy Case is closed, the party bringing an action must file a motion to reopen the Bankruptcy Case.

11

15.3 **Counterparts**. This Agreement may be executed in counterparts. In the event that any signature to this Agreement or any amendment hereto is delivered by facsimile transmission, by e-mail delivery of a ".pdf or by other electronic format data file (such as DocuSign), such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile, ".pdf" or other electronic format data file signature page were an original thereof (and the same shall be deemed as originals).

15.4 **Amendment**. This Agreement may only be amended or modified by the written agreement of the Parties.

15.5 **Severability**. If any of the provisions of this Agreement are held invalid under any law, such invalidity shall not affect the remainder of the Agreement.

15.6 **No Assignment**. Neither this Agreement nor any rights or obligations hereunder shall be assigned by a Party without the prior written consent of the other Party, except as permitted under this Agreement.

15.7 **Successors and Assigns**. Subject to **Section 15.6**, this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties.

15.8 **Headings; Construction**. The headings of the various Sections of this Agreement are for convenience only and are not intended to explain or modify any of the provisions of this Agreement. No rule of strict construction shall be applied in the interpretation or construction of this Agreement. When used in this Agreement, "including" means "including without limitation." In the event of any conflict or ambiguity between this Agreement and any Schedule, this Agreement shall control. Whenever the context requires: (a) the singular number shall include the plural, and vice versa; (b) the masculine gender shall include the feminine and neuter genders; (c) the feminine gender shall include the masculine and neuter genders; and (d) the neuter gender shall include the masculine and feminine genders.

15.9 **Notices**. Except as otherwise expressly provided herein, all notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement will be in writing and will be deemed to have been given (a) when personally delivered, (b) when transmitted by electronic mail (having obtained electronic delivery confirmation thereof), if delivered by 5:00 p.m. local time of the recipient on a Business Day and otherwise on the following Business Day, (c) the day following the day on which the same has been delivered prepaid to a reputable national overnight air courier service or (d) the third Business Day following the day on which the same is sent by certified or registered mail, postage prepaid, in each case, to the respective Party at the number, electronic mail address or street address, as applicable, set forth below, or at such other number, electronic mail address or street address as such Party may specify by written notice to the other Party.

12

**Notices to Buyer:**

> NxLite Corporation
> 41600 Haggerty Circle
> Canton MI 48188
> Attention:    David Mather
> Email:    dmather@nxlite.com

with a copy to counsel for Buyer (which shall not constitute notice):

> DLA Piper LLP (US)
> 444 West Lake Street, Suite 900
> Chicago, Illinois 60606
> Attention:    Oksana Koltko Rosaluk and Katie Allison
> Email:    oksana.koltkorosaluk@us.dlapiper.com
>     katie.allison@us.dlapiper.com

**Notices to Seller:**

> K. Jin Lim, Trustee of AGP E-Glass
> c/o Sandra L. O'Connor
> Sandra O'Connor Law, PLLC
> 100 N. Pond Drive, Suite A
> Walled Lake, MI 48390
> Email:    sandra@sandraoconnorlaw.com

Any Party at any time may give notice to the other Party of a different address other than that set forth above in accordance with the provisions of this **Section 15.9**. Failure of any Party to provide courtesy-only copies of notices, demands and other communications shall not impair, modify, limit or otherwise affect any Party's rights or remedies nor any Party's obligations under this Agreement.

15.10 **Interpretation**. Each Party has had an opportunity to review and revise this Agreement and consult with counsel, and any rule of contract interpretation to the effect that ambiguities or uncertainties are to be interpreted against the drafting party or the party who caused it to exist shall not be employed in the interpretation of this Agreement or any document executed in connection herewith.

15.11 **Survival of Obligations**. All obligations of the Parties set forth in this Agreement shall survive the Closing and Closing Date.

15.12 **No Waiver**. A waiver by either Party of a default by the other Party is effective only if it is in writing and shall not be construed as a waiver of any other default.

15.13 **Further Assurances**. Buyer and Seller shall each promptly sign and deliver all additional documents and perform all acts reasonably necessary to perform its obligations and carry out the intent expressed in this Agreement.

13

15.14 **No Beneficiaries**. No person or entity besides Buyer, Seller and their permitted successors, designees, and assigns, has any rights or remedies under this Agreement.

15.15 **Incorporation**. Any exhibits attached hereto and referred to herein are incorporated into this Agreement.

15.16 **Effect of Course of Dealing**. No course of dealing between the Parties in exercising any of their respective rights under this Agreement shall operate as a waiver of any such rights, except where expressly waived in writing. Further, nothing herein shall require either Party to terminate this Agreement upon breach or default of this Agreement by the other Party.

15.17 **Time**. Time is of the essence of this Agreement and each and every provision hereof.

15.18 **Seller Capacity as Trustee of the Estate; Limitation on Liability**. Buyer acknowledges and understands that Seller is the Trustee of the Estate and that Seller enters this Agreement solely in her capacity as the Trustee of the Estate and not in her personal capacity, and no liability or obligations shall accrue to her personally as a result of this Agreement.

15.19 **Additional Definitions**

(a) "**Action**" means any action, suit, litigation, arbitration, mediation, audit, proceeding (including any civil, criminal, administrative, investigative or appellate proceeding) or prosecution of any kind whatsoever whether sounding in contract or tort, or whether at law or in equity, or otherwise under any legal or equitable theory, commenced, brought, conducted or heard by or before any Governmental Body.

(b) "**Business Day**" means any day other than a Saturday, Sunday or other day on which banks in New York City, New York, banks in Michigan, or the Bankruptcy Court are authorized or required by law to be closed.

(c) "**Contract**" means any written contract, indenture, note, bond, lease, sublease, mortgage, agreement, guarantee, or other agreement that is binding upon a Person.

(d) "**Governmental Body**" or "**Governmental Bodies**" means any government, quasi-governmental entity, or other governmental or regulatory body, agency or political subdivision thereof of any nature, whether foreign, federal, state or local, or any agency, branch, department, official, entity, instrumentality or authority thereof, or any court or arbitrator of applicable jurisdiction.

(e) "**Liability**" or "**Liabilities**" means, as to any Person, any Interest, debt, adverse claim, liability, duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution, or premium of any kind or nature whatsoever, whether known or unknown, asserted or unasserted, absolute or contingent, direct or

14

1614469151.16

indirect, accrued or unaccrued, liquidated or unliquidated, or due or to become due, and regardless of when sustained, incurred or asserted or when the relevant events occurred or circumstances existed.

(f)    "**Order**" means any order, injunction, judgment, decree, ruling, writ or arbitration award of a Governmental Body of competent jurisdiction, including any order entered by the Bankruptcy Court in the Bankruptcy Case (including the Sale Order).

(g)    "**Outside Date**" means the date that is ten (10) Business Days after the entry of the Sale Order; *provided*, *however*, that if Buyer does not waive the 14-day period required for the Sale Order to become final, the Outside Date shall be extended an additional 14 days.

(h)    "**Person**" means an individual, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization, labor union, organization, estate, Governmental Body or other entity or group.

(i)    "**Tax**" or "**Taxes**" means any federal, state, local or foreign income, gross receipts, franchise, estimated, alternative minimum, add on minimum, sales, use, transfer, real property gains, registration, value added, goods and services, excise, natural resources, severance, stamp, occupation, windfall profits, environmental, customs, duties, real property, personal property, escheat, unclaimed property, capital stock, social security (or similar), unemployment, disability, payroll, license, employee or other withholding, or other tax, of any kind whatsoever, including any interest, penalties or additions to tax or similar items (whether disputed or not) and includes any liability for such amounts as a result of (a) being a transferee or successor or member of a combined, consolidated, unitary or affiliated group, or (b) a contractual obligation to any Person.

(j)    "**Tax Return**" means any return, report, declaration, claim for refund, information return or other document (including any related or supporting schedule, statement, attachment or information) filed or required to be filed in connection with the determination, assessment or collection of any Tax of any party or the administration of any laws relating to any Tax (including any amendment thereof).

(k)    "**Visas**" means the L-1 visas of each Specified Employee, as applicable.

[*Remainder of Page Intentionally Left Blank*]

15

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

**BUYER:**

**NxLite Corporation**

By:      _____
Name: _____
Title: _____

**SELLER:**

K. Jin Lim**,** solely in her capacity as the duly appointed the Trustee of the bankruptcy estate of AGP e-Glass Co.

By: _____
Name: K. Jin Lim

## <u>SCHEDULE A-1</u>

### Equipment not located on the Premises

1. The Glass Laser Cutting Machine, including, for the avoidance of doubt, all of the Estate's rights to installment or prepayments for the Glass Laser Cutting Machine

2. The Biesse Grinding CNC Machine

# SCHEDULE A-2

## Assumed Contract

1. Master Lease Agreement, dated as of October 21, 2021, by and between Debtor (as "tenant") and Landlord (as "landlord") for the Premises

## <u>SCHEDULE B</u>

### Excluded Assets

a.  All equity interests of Seller or any of its respective subsidiaries

b.  All Contracts other than the Assumed Contract (except as set forth under **Section 1.1(b)** and **(c)** of Agreement and **Schedule A-1**)

c.  The Glass Vacuum Coater

d.  The payment of $91,661.88 previously paid by Buyer to Seller under the Shared Space Agreement.